MARCUS, Justice.*
June G. Overton was charged by bill of information with operating a vehicle while intoxicated in violation of La.R.S. 14:98. After a bench trial, defendant was found *306 guilty as charged and sentenced to pay a fine of $400 plus court costs and to serve sixty days in jail, forty days of which were suspended. The remaining twenty days of the jail sentence were to be served on weekends commencing on a designated date. Defendant was placed on unsupervised probation for a period of one year. Defendant’s application to this court under our supervisory jurisdiction was granted.[1] She asserts three assignments of error. Because all of the assigned errors relate to the same legal issue, we will consider them together.
ASSIGNMENTS OF ERROR NOS. 1, 2 AND 3
Defendant contends the trial judge erred in admitting the result of the photo-electric intoximeter (PEI) test in evidence in that the certification of the machine used to administer the test was proved by hearsay evidence.
The record reflects that the state called three witnesses: Officers Crawford Wheeler and Joseph Monte, the arresting officers, and Officer Mark Pinkley, who administered the PEI test to defendant.
The arresting officers testified that they stopped the vehicle operated by defendant for improper lane usage. Defendant was unsteady on her feet, her eyes seemed bloodshot, and there was a slight odor of alcohol on her breath. She admitted that she had been drinking. Defendant was then taken to police headquarters where she was given a field sobriety test which she was unable to perform successfully. They also stated that defendant was administered a PEI test at headquarters. During cross-examination of one of the arresting officers, defense counsel asked for what violation of law defendant had been arrested. The officer responded: “To begin with the violation was improper lane usage. In turn, at headquarters Miss Overton failed the PEI test and it was DWI.”
Officer Pinkley testified that he administered the PEI test to defendant at police headquarters on the date in question. A certificate indicating that he was qualified to administer PEI tests was received in evidence without objection. The officer stated that he used machine # 777 to administer the breath test to defendant. He identified the log on machine # 777 in which all tests are recorded as well as the certification of the machine. He also identified the entry in the log showing the date on which the test was administered by him to defendant. He was then questioned as to the entry reflecting when the machine was inspected. He responded that it showed the date and place where the machine had been serviced and tested as well as by whom (Dale Efferson, Louisiana State Crime Lab). At this point, defendant objected to any evidence relating to the certification of the machine by Efferson on the ground of hearsay. The trial judge overruled the objection (Assignment of Error No. 1). During redirect examination, the witness stated that the result of the test administered to defendant was “.14 grams percent,” which figure was in excess of the amount necessary to create a presumption that defendant was under the influence of alcoholic beverages. Defendant objected to the admissibility of the result of the test, reasserting her argument that proof of certification was improperly admitted. The objection was not sustained (Assignment of Error No. 2). The state also offered in evidence a “PEI intoximeter checklist” prepared by the witness. Defendant objected to its introduction based on her previous argument that proof of certification of the machine was improperly admitted (Assignment of Error No. 3).
The legislature has enacted a system of laws governing tests for suspected drunken drivers. La.R.S. 32:661, et seq. Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to a chemical test or tests of his blood, breath, urine or other bodily substance for the purpose of determining the alcoholic content of his blood if arrested for any offense arising out of acts *307 alleged to have been committed while the person was driving a vehicle while believed to be under the influence of alcoholic beverages. La.R.S. 32:661. Upon the trial of any criminal action or proceeding arising out of acts alleged to have been committed by any person while driving a vehicle while under the influence of alcoholic beverages, the amount of alcohol in a person’s blood at the time alleged as shown by chemical analysis of the person’s blood, urine, breath, or other bodily substance shall give rise to certain presumptions. If there was at that time 0.10 percent or more by weight of alcohol in the person’s blood, it shall be presumed that this person was under the influence of alcoholic beverages. La.R.S. 32:662.
Recognizing the importance of establishing safeguards to guarantee accuracy in chemical testing, the legislature further provided that in order to be considered valid, the chemical analysis must be performed according to methods approved by the Department of Health. La.R.S. 32:663. Pursuant to this statutory mandate and to our decision in State v. Jones, 316 So.2d 100 (La.1975), the Louisiana Health and Human Resources Administration, Division of Health, promulgated rules and regulations pertaining to the performance of these chemical tests. Rules and Regulations for Chemical Test for Intoxication, 1 La.Register 562 (1975).[2] Section 6 of these rules and regulations requires that maintenance checks on a routine basis at least every four months on certain designated items as well as repair work be performed on the testing devices by technicians working for the Applied Technology Section of the Louisiana State Police Crime Laboratory who are certified by the Louisiana Health and Human Resources Administration, Division of Health, Bureau of Laboratories. Records covering maintenance, etc., of the photoelectric intoximeter instrument will be kept by the Louisiana State Police Crime Laboratory. In State v. Graham, 360 So.2d 853 (La.1978), we held that it was reversible error to admit in evidence the result of a PEI test where the state has not properly proven that the test was performed in full compliance with this section of the rules and regulations even though there is independent evidence of intoxication in the record.
Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. State v. Drew, 360 So.2d 500 (La.1978); State v. King, 355 So.2d 1305 (La.1978). Hearsay evidence is inadmissible except under one of the statutory or well-recognized exceptions. La.R.S. 15:434.
The “public documents” exception to the hearsay rule has been recognized by this court. Under this exception, the usual requirement that the declarant be shown to be unavailable is dispensed with. State v. Nicholas, 359 So.2d 965 (La.1978). In Nicholas, we stated:
[T]he evidence so introduced must be admissible for some relevant and proper purpose, and the trial court must scrutinize such offerings so as to limit their introduction in accordance with this (especially in jury trial situations). Further, upon any indicia of unreliability being shown, the trial judge has the discretion to reject the evidence or to condition its admissibility upon further proof, and *308 should exercise it, in order to assure that the probability of trustworthiness is so great as to justify the document’s introduction as an official record under this exception to the hearsay rule.
In the instant case, there is no contention that the log entry, an unsworn, written, out-of-court assertion offered to prove the truth of the matter asserted, i. e., that the machine had been inspected and certified, was not hearsay evidence. However, the state contends that this evidence is admissible under the “public documents” exception to the hearsay rule. This may well have been true had the log book itself been properly admitted in evidence; however, the state offered only Officer Pink-ley’s testimony as to what the log entry said. Such hearsay testimony does not fall within the “public documents” exception, nor any of the other statutory or well-recognized exceptions to the hearsay rule. Thus, we conclude that the state did not properly prove that the machine had been certified in accordance with section 6 of the rules and regulations. Accordingly, the trial judge committed reversible error in admitting the hearsay testimony as evidence of the certification of the machine and in relying upon such testimony for the subsequent admission of the result of the PEI test.
By supplemental brief, the state contends the allegedly improper admission of the certification evidence does not constitute reversible error since one of the arresting officers had previously testified without objection during cross-examination that defendant had failed the PEI test. We do not agree. Although unobjected to hearsay testimony constitutes substantive evidence, we conclude that it is clearly too unreliable to render harmless the trial judge’s error in admitting in evidence the result of the PEI test administered upon defendant.
DECREE
For the reasons assigned, defendant’s conviction and sentence are reversed and the case is remanded for a new trial in accordance with the views herein expressed.
SUMMERS, C. J., dissents.

 Chief Judge William A. Culpepper participated in this decision as Associate Justice Ad Hoc sitting in the place of Chief Justice Sanders, retired.

. 361 So.2d 1213 (La.1978).

. At the time this crime was committed and the test administered to defendant (June 21, 1977), La.R.S. 32:663 required, as noted above, that the chemical analysis be performed according to methods approved by the Department of Health. Subsequently, that statute was amended to require that the methods be approved by the Department of Public Safety. 1977 La. Acts, Act No. 533 § 1 (effective September 9, 1977). Pursuant to that amendment, the Department of Public Safety has promulgated a new set of rules and regulations pertaining to breath and blood alcohol analysis methods and techniques. Breath and Blood Alcohol Analysis Methods and Techniques, 4 La.Register 390 (1978) (effective October 20, 1978). The amendment to the statute and the new rules and regulations adopted pursuant thereto are not applicable here.