501 So.2d 1388 (1987)
Robert GULLEY, Appellant,
v.
STATE of Florida, Appellee.
No. 85-1653.
District Court of Appeal of Florida, Fourth District.
February 11, 1987.
Douglas N. Duncan of Foley, Colton & Duncan, P.A., West Palm Beach, for appellant.
Robert A. Butterworth, Jr., Atty. Gen., Tallahassee, and Lee Rosenthal, Asst. Atty. Gen., West Palm Beach, for appellee.
WEBSTER, PETER D., Associate Judge.
Appellant, defendant below, appeals his conviction for vehicular homicide. He contends that the results of a blood alcohol test were erroneously admitted into evidence at his trial, and that such error injuriously affected his substantial rights, including his right to a fair trial.
In November 1982, defendant, while driving his truck, was involved in a collision with another vehicle. A passenger in the other vehicle died as a direct result of the collision. Defendant was ultimately *1389 charged with manslaughter by an intoxicated motorist [§ 316.1931(2), Fla. Stat. (Supp. 1982)] and vehicular homicide [§ 782.071, Fla. Stat. (1981)].
Shortly after the collision, defendant (who had, himself, been injured) agreed to allow a sample of his blood to be drawn at the hospital to which he had been taken, so that a blood alcohol test might be performed. Prior to trial, defendant moved to suppress the results of the blood alcohol test. Among the grounds raised in support of his motion were that the blood sample had not been drawn by "a physician, registered nurse, or duly licensed clinical laboratory technologist or clinical laboratory technician," as required by Section 316.1933(2)(a), Florida Statutes (Supp. 1982); and that the test performed was not "substantially in accordance with methods approved by the Department of Health and Rehabilitative Services," as required by Section 316.1933(2)(b), Florida Statutes (Supp. 1982), because the sample had not been "collected in a vial ... containing an acceptable anticoagulant substance" in accordance with Department of Health and Rehabilitative Services Rule 10 D.E.R. 82-150.
A hearing was held on the motion to suppress. At that hearing, testimony established unequivocally that the person who had drawn the blood sample was not at the time "a physician, registered nurse, or duly licensed clinical laboratory technologist or clinical laboratory technician," as required by Section 316.1933(2)(a); and that the blood had not been collected in compliance with Department of Health and Rehabilitative Services Rule 10 D.E.R. 82-150. Nevertheless, the trial court denied the motion to suppress and a subsequent motion for reconsideration, and the case proceeded to trial.
Review of the trial transcript discloses that the State's theory of the case was that the collision and resulting death would not have occurred but for the fact that defendant was intoxicated. Defendant's theory of the case, on the other hand, was that he had not been under the influence of alcohol; that the collision was nothing more than a tragic accident, caused in principal part by a malfunctioning traffic light which led defendant to believe, mistakenly, that he had the right-of-way; and that, while defendant may have been negligent, his negligence did not reach a level sufficient to justify imposition of criminal penalties.
The testimony at trial again established unequivocally that the person who had drawn the blood sample was not at the time "a physician, registered nurse, or duly licensed clinical laboratory technologist or clinical laboratory technician," and that the blood had not been "collected in a vial ... containing an acceptable anticoagulant substance." In addition, the testimony revealed for the first time that the person who had actually analysed the blood did not possess a permit from the Department of Health and Rehabilitative Services to do so, as required by Section 316.1933(2)(b), Florida Statutes (Supp. 1982). Despite timely objections that the results of the blood test were inadmissible because Section 316.1933(2)(a) and (b) had not been complied with, the trial court allowed the results of the test into evidence. Thus, the person who had analyzed the blood was allowed to testify that the results of her analysis established a blood alcohol content of 0.117 grams percent ethyl alcohol.
A pathologist was allowed to testify at length regarding the effects of alcohol on the human body. Over objection, he was also allowed to testify that, based upon the results of defendant's blood alcohol test, at the time of the collision defendant's blood alcohol content was between 0.11 and 0.155; that Florida law prohibits a person from driving when his blood alcohol content is greater than 0.10; and that an average person having a blood alcohol content between 0.11 and 0.155 would be intoxicated.
According to the Trooper who first arrived at the scene, defendant had a head injury, had a strong odor of alcohol and did *1390 not appear coherent. The Trooper testified that, in his opinion, defendant was intoxicated. The Trooper also testified that the traffic light was not functioning properly  when it should have been red, there was no light at all. The second Trooper on the scene, an expert in accident reconstruction who arrived about an hour after the collision, testified that the collision occurred at night; that the traffic light was not functioning properly; that defendant's vehicle was traveling about 37 miles per hour and the vehicle in which the decedent had been a passenger about 39 miles per hour; and that defendant appeared intoxicated and smelled of alcohol. This Trooper also testified that, about a week after the collision, defendant told him that, on the day of the collision, the defendant had worked about ten hours and was fatigued; that he had eaten a sandwich and had some beer earlier in the day; and that he was familiar with the road on which the collision had occurred. He also testified that defendant had not applied his brakes before the collision, but that the "manner" in which defendant had been driving did not contribute to the accident.
A witness at the scene testified that he thought originally that defendant was intoxicated because his speech was slurred. However, he also testified that he had since discovered that defendant's speech is not normal, as a result of which he changed his opinion regarding defendant's intoxication at the time of the collision. He also said that defendant told him at the scene that he had thought the light was green. Another witness, who had seen the collision, testified that it was dark at the time; that defendant was in front of him, traveling in the same direction; that the traffic light was not functioning properly; that defendant had not been speeding; that parked cars were obstructing the view in the direction from which the vehicle in which the decedent was a passenger was coming; that defendant was driving in "a safe normal fashion" and not weaving; that, immediately after the collision, defendant did not smell of alcohol or appear to be intoxicated; and that defendant "was in a state of shock."
A barmaid testified that on the afternoon of the collision defendant had come to the neighborhood bar where she worked and had a sandwich and three beers. She said that defendant had been coming in for some time, about once a week; that he came in principally to play pool, rather than to drink; that she had never seen him drunk; that he did not appear to have had any alcohol before coming in; and that he did not become drunk or "impaired" while there.
The paramedic who treated defendant at the scene and transported him to the hospital testified that he did not believe defendant was intoxicated. Similarly, a patron at the bar testified that he saw defendant there about an hour and a half before the collision; that defendant had one beer and a sandwich while he was there; and that defendant appeared neither drunk nor impaired.
Finally, defendant testified that he arrived at the neighborhood bar about three hours before the collision and had a sandwich and three beers. He said that he had had nothing to drink before arriving. According to defendant, he left the bar about an hour before the collision and returned to his office, which was nearby. He said that he stayed there a short time and then left for home. He did not consume any alcoholic beverages after leaving the bar. He testified that as he approached the intersection where the collision occurred he did not see a red or yellow light, so he assumed the light was green and proceeded into the intersection. He said that the beers he had had earlier had nothing to do with the collision. He also testified that he believed he was a good driver.
During closing argument, the prosecutor emphasized the pathologist's testimony that, based on the results of the blood test, defendant was intoxicated. In addition, he repeatedly argued to the jury that, because *1391 defendant was a good driver, there could be only one explanation for the collision  defendant was intoxicated. This was the prosecutor's principal argument in support of his position that defendant had operated his vehicle in a "reckless manner" and was, therefore, guilty of vehicular homicide as well as manslaughter by an intoxicated motorist.
The jury found defendant not guilty of manslaughter by an intoxicated motorist, but guilty of vehicular homicide.
Our legal analysis must commence with the undisputed fact that Section 316.1933(2)(a) and (b), Florida Statutes (Supp. 1982), was violated. In violation of subsection (2)(a), the blood sample was not drawn by "a physician, registered nurse, or duly licensed clinical laboratory technologist or clinical laboratory technician." In violation of subsection (2)(b), the analysis of the blood was not "performed substantially in accordance with methods approved by the Department of Health and Rehabilitative Services," or "by an individual possessing a valid permit issued by the department for this purpose." The dispositive questions for purposes of this appeal are whether these violations rendered the results of the blood test and testimony concerning the results inadmissible as evidence and, if so, whether the erroneous admission of the results and testimony injuriously affected defendant's substantial rights, requiring reversal.
The courts of this State have on numerous occasions been called upon to determine the admissibility of test results obtained in violation of statutory directives similar to those violated in this case. The decisions have uniformly held that such results are inadmissible. See, e.g., Strong v. State, 465 So.2d 549 (Fla. 3d DCA 1985); State v. Roose, 450 So.2d 861 (Fla. 3d DCA 1984), pet. for rev. den., 451 So.2d 850 (Fla. 1984); State v. Potter, 438 So.2d 1085 (Fla. 2d DCA 1983); Campbell v. State, 423 So.2d 488 (Fla. 1st DCA 1982). We are of the opinion that these decisions are correct and that it was, therefore, error to admit the blood alcohol test results and expert testimony regarding the results into evidence. The magnitude of the error was even greater in this case because not one, but three, statutory directives were violated.
The State argues that even if it was error to admit the test results and expert testimony regarding those results into evidence, such error was harmless (and, therefore by implication, did not injuriously affect defendant's substantial rights) because there was sufficient other independent, competent evidence to support the jury's verdict on the vehicular homicide count and the testimony regarding the test results could not have contributed to the jury's verdict on that count. The Court rejects this argument.
An essential element of the offense of vehicular homicide is proof beyond a reasonable doubt that the defendant operated a motor vehicle "in a reckless manner likely to cause the death of, or great bodily harm to, another." McCreary v. State, 371 So.2d 1024 (Fla. 1979). The State's entire case was built on the contention that defendant had been "reckless" because he was intoxicated at the time of the collision. The prosecutor repeatedly argued to the jury that the only explanation for defendant, a good driver, having been involved in the collision was the fact that he was intoxicated. In fact, his last words to the jury were: "This man was intoxicated, and that is why he did that... ." The competent evidence regarding defendant's sobriety was patently in conflict. Other competent evidence suggests momentary inattention as strongly as it suggests "recklessness." Given the conflicting competent evidence, this Court believes that the testimony regarding the test results and the expert opinion based on those results must have been given considerable, if not decisive, weight by the jury on the issue of "recklessness." Therefore, the erroneously admitted *1392 testimony was prejudicial and injuriously affected defendant's substantial rights as to the vehicular homicide charge. Cf. Grala v. State, 414 So.2d 621 (Fla. 3d DCA 1982) (Error to admit blood test results, but error harmless in light of overwhelming competent evidence of intoxication).
This matter is reversed and remanded for a new trial on the vehicular homicide charge. On retrial, no evidence or testimony regarding the results of the blood alcohol test shall be permitted.
REVERSED AND REMANDED, WITH DIRECTIONS.
LETTS and WALDEN, JJ., concur.