## STATE OF FLORIDA v HUMPHRIES
## Case Nos. 86-151014 TT A02 and 86-151012 TT A02
County Court, Palm Beach County

May 6, 1987

### APPEARANCES OF COUNSEL

**Amy Burns,** Certified Legal Intern, State Attorney's Office, for plaintiff.

**David Glantz** for defendant.

## OPINION OF THE COURT

ROBERT S. SCHWARTZ, County Judge.

THIS CAUSE CAME before the Court on May 4, 1987 pursuant to the Defendant's Motion to Exclude Breath Test Results. The State was represented by Amy Burns, Certified Legal Intern, and the Defendant was represented by David Glantz, Esq. The Court having heard testimony, heard argument of counsel, and being otherwise fully advised in the premises, hereby grants the Defendant's motion.

The Defendant asserts that the operation and maintenance of the breathalyzer was not in substantial compliance with various regulations of HRS as mandated by F.S. 316.1932(b)(1). This Court, in the case of *State v. Hill,* previously held that the standard to be applied, regarding whether there was substantial compliance, is whether the alleged violation prejudiced the Defendant by raising a legitimate question regarding the authenticity or scientific reliability of the test results. This standard is in consonance with the recent Third DCA case of *Gargone v. State,* 503 So.2d 421 (3d DCA 1987).

Although various violations are alleged, the Court finds that only one raises a legitimate question regarding the scientific reliability of the test results in this case.

The Defendant was given two tests within five minutes of one another. The results of the tests show a variation of approximately .026 or more. The Defendant asserts that test results were unacceptable as no third test or blood test was given. In support of this contention the Defendant cites the "Note" on the bottom of HRS form 1031 (Defense Exhibit #5) and Florida Statute Chapter 120.52(15).

The "Note" on HRS form 1031 states:

"The two (2) breath tests shall be run no more than five minutes (5) apart and the two results are acceptable if within + or − 0.02%. If more than 0.02% difference, a third (3) test or a blood test should be given. . . ."

Section 120.52(15) of the Florida Administrative Procedure Act states, inter alia, that a "Rule" includes in its definition:

". . . any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule."

The Court finds that the "Note" is a "Rule" of HRS with which the

**101**

Operator of a Breathalyzer must substantially comply. Further, this rule contains language which makes compliance mandatory rather than permissive. Further, the Court determines that the reason for the rule is to assure that the instrument is functioning properly and not reacting to some influence other than the alcohol contained in a suspect's breath. There was no substantial compliance with this rule as the deviation prejudiced the Defendant by raising a legitimate question as to the scientific reliability of the test results in the case at bar.

As to the Defendant's other alleged violations, the Court finds that:

1. The failure to conduct a maintenance test in the calendar month of July, in violation of HRS Rule 10D-42.24(1)(c) did not raise a legitimate question regarding the scientific reliability of the Defendant's test given in the month of September. This is so because the effects of the violation were attenuated by the successful monthly maintenance tests given in the months of August, September, and October.

2. There is no requirement in the HRS RUIes that the machine be tested for radio frequency interference. The Court notes however, that the failure of the PBSO to install a device to shield the machine from such interference may, along with other factors, raise a question as to the reliability of the instrument in a particular case, such as the one at bar where there is an unexplained and acceptable deviation in the test results.

3. There is no requirement under the HRS Rules that the chemicals in the test vials be tested for proper chemical proportion.

4. There is no HRS rule requiring the calibration of the instrument to be verified by measuring the heated sample output chamber with a volumetric gauge. Further, the ratio upon which the machines operates, of 2100:1, is the standard ratio for all of the instruments currently certified by HRS in the State of Florida. The uncontradicted testimony of Deputy Allen is that this ratio would yield an accurate result for 85% of the population. In the absence of any contradictory evidence, any particular defendant will be presumed to be within this average.

5. There is no current HRS Rule requiring the monthly maintenance tests to be recorded in 3 digits. However, the Court notes that the better practice would be to test the machine to 3 digits. The maintenance manual for the instrument, (Defense exhibit #6) requires that the photometer assembly be adjusted or taken apart and cleaned if there is a deviation when balancing the null meter

102

of + or − .005%. Further, an HRS document regarding the licensing of new instruments (Defense exhibit #7) requires that the instruments have an accuracy ". . . of no more than plus or minus 10% of an ethonol vapor concentration of 0.05% w/v. . . ." Although the current version of Chapter 10D-42 F.A.C. is silent in this regard, the .005% standard finds support in Rule 10D-42.06(1)(c)2, F.A.C., which was repealed in 1977. And finally, the State's witness concedes that he now tests the instrument to three digits in order to assure better accuracy.

6. The testimony of Deputy Karmelin was that he made certain that for 20 minutes preceding the test, the Defendant did not take anything by mouth nor regurgitate, in compliance with Rule 10D-42.24(1)(f).

DONE AND ORDERED, this 6th day of May 1987 at West Palm Beach, Florida.