# STATE OF FLORIDA v BENNETT, et al. (Consolidated)

## Case No. 84072/3-QH, etc.

County Court, Volusia County

December 19, 1988

### APPEARANCES OF COUNSEL

**Sam Easterbrook,** Assistant State Attorney, for plaintiff.
**Flem K. Whited, III,** for defendants.

### OPINION OF THE COURT

SHAWN L. BRIESE, County Judge.

THIS CAUSE came before the Court on August 30, 1988 for an

evidentiary hearing on Defendants' Motions in Limine and/or Motions to Declare Sections 316.1932 and 316.1934 Unconstitutional. This Court upon consideration of testimony elicited, argument, and case authority, finds as follows:

The defense, in their motions, allege that the current Department of Health and Rehabilitative Services (HRS) regulations do not meet the Department's responsibility to ensure reliable scientific breath test evidence. The only two issues raised in said motions and addressed at the evidentiary hearing dealt with the alleged failure to require appropriate record keeping at the local law enforcement agency level and the alleged failure to establish a system to ensure access to breath test machines by only authorized personnel. The defense also alleges that the above deficiencies violate their due process rights.

HRS Rule 10D-42.024(1)(a) provides, "Chemical test instruments used in the breath method . . . should only be accessible to an authorized technician and such other personnel as may be designated by the technician." A technician is defined in HRS Rule 10D-42.024(8) as a person holding a valid permit to determine chemical analysis of breath issued by the Department.

Dr. Howard R. Rarick, Scientific Director of the Florida Implied Consent Program of HRS, was the only witness to testify. Dr. Rarick testified that all instruments are kept in a locked room or a locked cabinet (Transcript of August 30, 1988 hearing, hereafter "T" 39). Dr. Rarick testified that any technician who has been authorized by the law enforcement agency to have a key to the room or cabinet is authorized within the meaning of HRS Rule 10D-42.024(1)(a) (T 38-40).

The Court in *State v Kattengell,* 7 Fla. Supp.2d 139 (11th Cir. 1984) was faced with an analogous issue. The facts reveal that the breathalyzer was located in a locked room. The key to the room was kept on a ring with the jail cell key. The key ring was kept in a box at the station's reception desk and available only upon request by an authorized officer. The operation center commander was the custodian of the key ring. The defense argued that officers had access to the key ring containing both keys, and that an officer who was putting a person in a jail cell could have access to the breathalyzer room. There was no testimony that, in fact, anyone had utilized that key to enter the breathalyzer room and in any way tampered with the machine.

The court noted the change in the law from the 1975 HRS rule requiring instruments be *only* accessible to an authorized technician and the current rule stating that instruments *should* only be accessible

**57**

to an authorized technician along with the addition of substantial compliance provisions. The court held that mere possibilities that an unauthorized person "could" have access to the machine did not render the test unreliable or suppressible. There has been no showing, in the instant case, that the relevant HRS rule in conjunction with the fact that all instruments are secured does not ensure the instruments' integrity.

The second issue gives this Court the great concern. HRS Rule 10D-42.024(14) (Maintaining the Log) provides:

(a) A current running log of each test given shall be maintained by each agency indicating:

1. Name of subject to which test is administered.

2. Date.

3. Time of test.

4. Percent of blood alcohol.

5. Arresting officer.

6. County where offense occurred.

7. Ampoule control number or test kit serial number, if applicable.

8. Date last preventive maintenance conducted.

9. Technician's name.

(b) This log must be kept two years from the last entry date.

Dr. Rarick testified that Rule 10D-42.024(14) provides the minimum agency record requirements. (T 42) Dr. Rarick testified that a technician is not required to make a log notation when a machine malfunctions, when and where the machine was sent for repairs, the actual repairs made, or when the machine was returned after the repairs. (T 43-44, 63) Dr. Rarick also testified that a technician "can take it [the machine] anywhere they want [for repairs]" (T 44, 63-64). Dr. Rarick did admit that a situation could arise where machine malfunctions and repairs would never be known due to the fact that said malfunctions and repairs are not recorded in conjunction with the fact that the technician who witnessed the malfunctions and had the repairs completed is no longer employed by the agency. (T 44-47) Dr. Rarick takes the position that the normal monthly maintenance is all that is required. (T 44 see also T 46, 47) Dr. Rarick did admit that "writing it down" was preferable, although not required. (T 63)

The defense relied on Louisiana case authority. The defendant's blood in *State v Rowell,* 517 So.2d 799 (La. 1988) was tested using a

58

gas chromatographic analysis. The chemist who performed the blood analysis testified that the gas chromatograph was not routinely inspected or maintained. When it malfunctioned he repaired it. If he was unable to do so he contacted the manufacturer.

The State, in order for it to avail itself of the statutory presumption of intoxication arising from a chemical analysis, must show that the Department of Public Safety has promulgated detailed procedures which will insure the integrity and reliability of the chemical test including provisions for repair, maintenance, inspection, cleaning, certification, and chemical accuracy. It must show that the state has strictly complied with the promulgated procedures.

The Supreme Court found that the State failed to meet the above specified requirements since the regulations did not specify the type of proficiency testing required to obtain a permit to conduct blood analysis, did not provide for the repair, maintenance, or inspection of the gas chromatograph, did not sufficiently provide for the preservation of the blood sample, and did not insure the accuracy of the chemicals used to calibrate the gas chromatograph. The Court reversed the conviction finding prejudice based on the wrongful introduction of a chemical test result, which by law presumed a defendant to be intoxicated. See also *State v Tanner,* 457 So.2d 1172 (La. 1984) cited by the defense and, *State v Ginn,* 328 So.2d 672 (La. 1976) and *State v Jones* 316 So.2d 100 (La. 1975).

The issue in *State v Graham,* 360 So.2d 853 (La. 1978) involved the standard quality of the test chemicals used. The Court found that the prosecution's failure to produce a manufacturer's certificate of chemical quality based on its laboratory test of a portion of the test ampule could not be excused as an inconsequential departure from the procedures formulated by the regulatory agency.

The Court couched the issue as one of fundamental fairness when it stated:

A conviction obtained through chemical test legislation, which not only destroys a defendant's presumption of innocence but also severely restricts any possibility of a defendant proving his innocence, must be reversed if not accompanied by all of the safeguards designed to insure reliable chemical analysis.

One of those safeguards involve specific requirements for repair and maintenance. Louisiana requires that all repair work be recorded in detail and that repair work be performed by a specific agency by certified technicians. See also *State v Westbrook,* 392 So.2d 1043 (La. 1980) and *City of Baton Rouge v Overton,* 367 So.2d 305 (La. 1979).

Florida currently has no specific provisions requiring that machine malfunctions or necessary repairs caused by the malfunctions or modifications be recorded in detail in any location.

The Supreme Court in *State v Bender,* 382 So.2d 697 (Fla. 1980), noted that "the purpose of Section [316.1932 and 316.1934] which direct law enforcement to use only approved technicians and methods is to ensure *reliable* scientific evidence for use in future court proceedings and to protect the health of those persons being tested, who by this statute have given their implied consent to these tests." [Emphasis added]. The Court went on to note that a defendant can attack the reliability of the testing procedures.

It seems elementary that the initial method of ensuring reliable scientific evidence is to require detailed record keeping. Records of maintenance, malfunctions, repairs, and modifications are of particular import. Records provide a basic schematic of a machine's reliability. This Court does not suggest that its rationale is in conflict with *Bender* or its progeny but uses these cases as a foundation to address the instant issue.

The HRS rules promulgated pursuant to sections 316.1932 and 316.1934, Fla. Stat. replace the normal scientific test predicate. Expert testimony as to the meaning of the test is eliminated. Likewise the state is not initially required to show the test's reliability. The defense is now relegated to attacking the reliability of the testing procedures by effective cross examination and presenting defense evidence. This Court notes that it has, in the past, denied defense motions to suppress based on that position. See for example *State v Bennett, et al.,* 30 Fla. Supp.2d 51 and 30 Fla. Supp.2d 59 (Volusia Cty.Ct. 1988).

The failure of the HRS to require detailed record keeping denies the defense the opportunity to either challenge or effectively challenge a machine's reliability. The Court in *Commonwealth v Shiffler,* 541 A.2d 780 (Pa. Super. Ct. 1988) was faced with an analogous situation. Shiffler alleged in an untimely motion to suppress that the intoxilyzer on which he had been tested had malfunctioned at least eleven times during a relevant two month time period. He maintained the machine should have been removed from service pursuant to statute. It appeared that the information concerning the malfunctions came from the accuracy and calibration log books kept pursuant to statute.

The issue on appeal was whether the trial court erred in precluding the testimony of a defense expert concerning the log books. The Court found that where the defendant was convicted of having a .10 percent or greater blood alcohol content the accuracy of the test becomes

crucial. It is imperative that a defendant, in order to receive a fair trial, must be permitted to attack the reliability of the test results. Competent evidence of the machine's malfunction was certainly relevant and material because it had a direct impact upon the weight the jury would give to the evidence. The judgment and sentence was vacated. See also *People v English,* 480 N.Y.S.2d 56 (App. Div. 1984). The failure of the HRS, in the instant case, to require detailed records also frustrates the defense's ability to receive a fair trial.

The last issue to be addressed with regard to detailed record keeping is the issue of substantial compliance. It appears that the only case which attempts to define substantial compliance is *State v Hill,* 26 Fla.Supp.2d 82 (Palm Beach Cty.Ct. 1987) where Judge Schwartz held that:

> The standard to be applied, on a case-by-case basis, in determining whether the testing procedures have been performed substantially according to methods approved by the Department, is whether the defect prejudices the defendant by raising a legitimate question regarding the authenticity or scientific reliability of the test results.

The *Hill* court found substantial compliance with log requirements even though Hill's name and test results were not included in the running log. The Court noted there was no other defect in the log and the information required to be contained in the log was available to the defense through documentation generated by compliance with other HRS regulations. The defense was unable to raise any question of the authenticity or scientific reliability of the test results. For examples of cases in which substantial compliance was not found see *Gargone v State,* 503 So.2d 421 (Fla. 3d DCA 1987); *Gulley v State,* 501 So.2d 1388 (Fla. 4th DCA 1987); *State v Humphries,* 25 Fla. Supp. 2d 100 (Palm Beach Cty.Ct. 1987); and *State v Maranda,* 23 Fla. Supp. 2d 69 (Palm Beach Cty.Ct. 1987).

Based on the above and foregoing this Court is of the opinion that due to HRS' failure to require detailed agency record keeping of modifications, malfunctions, and repairs, that the basic starting point to ensure a machine's reliability is missing. Likewise, the defense has also lost a method to effectively challenge a machine's reliability by cross-examination and use of defense expert witnesses. This Court fails to see how the concept of substantial compliance applies when there exists no adequate HRS rules dealing with the subject matter in question. Cf. *Riggins v State,* 703 S.W.2d 463 (Ark. Ct. App. 1986). Notwithstanding that fact, it is easy to see how a legitimate question regarding the authenticity or scientific reliability of the test results can arise to the

defendant's prejudice based on the lack of said regulations. See for example *State v Flood,* 523 So.2d 1180 (Fla. 5th DCA 1988). The substantial modification in *Flood* was not required to be and was not documented in any location.

This Court does not take its decision lightly. It is HRS' responsibility to assure reliable scientific evidence. HRS' position that it must only comply with "minimum requirements" along with its recognition that "writing it down" was preferable does not address that responsibility for the reasons stated herein. Despite the fact that logic would seem to dictate detailed agency record keeping, HRS has taken no action to see that it occurs. The deficiencies noted herein do not assure reliable scientific evidence. It is appropriate that this Court grant defendant's motions in limine with regard to breath test evidence until HRS addresses the deficiency.

This Court pursuant to Fla. R. App. 9.160 certifies the following question to be of great public importance:

In order to assure reliable scientific chemical test evidence must HRS implement regulations requiring detailed agency record keeping of machine modifications, malfunctions, and repairs?

DONE and ORDERED in Chambers at Daytona Beach, Volusia County, Florida, this 19th day of December, 1988.