## STATE OF FLORIDA v GIANGRANDE

Case No. 88-100AC10 (County Court Case No. 88-1392MM10)

Seventeenth Judicial Circuit, Broward County

August 16, 1989

**APPEARANCES OF COUNSEL**

**Carolyn V. McCann,** Assistant State Attorney, for appellant.

**Steven Michaelson,** Chief Assistant Public Defender, for appellee.

### OPINION OF THE COURT

FLEET, J., Circuit Judge.

THIS CAUSE comes before the Court upon the appeal of the lower court's decision granting Appellee's Motion to Suppress breath test

results. Appellee was charged by Informaton on June 1, 1988, with driving a vehicle while under the influence of alcoholic beverages to the extent his normal faculties were impaired in violation of section 316.193(1) and (4), *Fla. Stat.* (1987).

After the Defendant was arrested, two breath tests were administered with the Intoxilyzer 5000. Defendant's first breath sample registered a blood alcohol content of .218. However, the Intoxilyzer indicated on the printout that the first sample was deficient. The second sample registered a blood alcohol content of .219. The same were taken two minutes apart. The second sample was a valid reading. A third test was not administered.

The Defendant filed a motion to suppress the results of the breath tests on the ground that two complete breath tests were not done as required by HRS Administrative Rule 10-41.0211(4). A hearing was held on the Defendant's Motion to Suppress on November 23, 1988. The State presented the testimony of Deputy David Fries as to the use and operation of the Intoxilyzer 5000. Deputy Fries testified that he was the maintenance operator of the Intoxilyzer 5000, model 64-002863, the precise machine that was used to test Appellee. The State argued that the test was done in exact compliance with HRS rules and section 316.1932, Fla. Stat. and that any deficiency of the first sample was due to the actions of Appellee and not the police. Appellant further argued that only substantial compliance is required for test results to be admissible into evidence.

The Court granted Defendant's motion to suppress. This appeal followed.

The issue which will be considered by the Court is:

WHETHER THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT'S MOTION TO SUPPRESS WHERE ONLY ONE COMPLETE BREATH TEST WAS PERFORMED?

The rules for alcohol testing promulgated by HRS were adopted pursuant to sections 316.1932-316.1934, Florida Statutes (1983). These procedures are set forth in the Administrative Rules. Rule 10D-41.0211(4) provides that:

Determining shall mean . . . the analyzing of a minimum of two consecutive samples of breath collected within five minutes, and reporting such analysis as the percent of alcohol in the blood.

Operating instructions for the Intoxilyzer Model 5000 are set forth in Rule 10D-41.024(13). These instructions are incorporated in the HRS Operational Check List, Form 1615 which also directs in a note

[Attachment 1] that "The two (2) breath tests shall be run no more than five (5) minutes apart and the two results are acceptable if within + or − 0.02%. If more than 0.02% difference, a third (3) breath test or a blood test should be given and the results recorded."[1]

One of the primary rationales for the regulations is to guarantee "reliable scientific evidence for use in future court proceedings." *State v Bender,* 382 So.2d 697, 699 (Fla. 1980). Rule 10D-42.022(1) requires that the two tests be performed on samples of deep lung air. Officer Fries testified that the deficiency readout indicates the blood/alcohol level was still rising and deep lung air had not been delivered to the Intoxilyzer.

The State argues that the deficient result was caused by the Defendant and that the two tests were administered in substantial compliance with the Rules. Section 316.1932(f) Fla. Stat. (1987) provides:

The tests determining the weight of alcohol in the defendant's blood shall be administered . . . substantially in accordance with rules and regulations which shall have been adopted by the Department of Health and Rehabilitative Services.

Section 316.1934(3) Fla. Stat. (1987) provides in part that:

A chemical analysis of a person's breath, in order to be considered valid under the provisions of this section, must have been performed substantially in accordance with methods approved by the Department of Health and Rehabilitative Services . . . Any insubstantial differences between approved techniques and actual testing procedures in any individual case shall not render the test or test results invalid.

Chapter 316.1932(1)(b)(1) does not require strict compliance with HRS regulations, nor does it define substantial compliance. In *State v Hill,* 26 Fla. Supp. 2d 82 (Palm Beach County Ct. 1987), the Court held that the standard to be applied in determining whether the testing procedures have been performed substantially according to methods approved by the Department is whether the defect prejudices the Defendant by raising a legitimate question regarding the authenticity or

---

[1] In *State v Humphries,* 25 Fla. Supp. 2d 100 (Palm Beach County Ct. 1987), the Court ruled that this Note was a Rule with which there must be substantial compliance and that the Rule contains language which makes compliance mandatory rather then permissive. The reason for the rule is to assure that the instrument is functioning properly and not reacting to some influence other than the alcohol contained in a suspect's breath. *See Also State v Paskalic,* 26 Fla. Supp. 2d 79 (Palm Beach County Ct. 1987); *State v DeKay,* 27 Fla. Supp. 2d 8 (Palm Beach County Ct. 1987).

scientific reliability of the test results. This standard is in consonance with *Gargone v State,* 503 So.2d 421 (3d DCA 1987).

The purpose of the two test requirement is to assure that the instrument is functioning properly. The State relies on the fact that there was only a .001% difference between the two tests. While this range would have been acceptable for two valid readouts, the difference is irrelevant where one of the two test results was deficient. When the officer received the deficient readout, a third test should have been performed.

When questioned by the Court as to why a third test was not performed, Officer Fries responded:

A. "It's not addressed in the rule because this is the only instrument that will print out a deficient result. But, it has been instructed to my people that a third sample should be taken so that you have two uncontestable results. They didn't know about it at the time."

After reviewing the facts in the case *sub judice,* the court finds that there was no substantial compliance with the Rules as the deviation prejudiced the Defendant by raising a legitimate question as to the scientific reliability of the test results in the case at bar. Without substantial compliance with the administrative regulations, the test results are clearly inadmissible since "test results are admissible into evidence only upon compliance with the statutory provisions and the administrative rules enacted by its authority." *Bender,* 382 So.2d at 699; *Beasley v Mitel of Del.,* 449 So.2d 365 (Fla. 1st DCA 1984).

Accordingly, the lower court's Order Granting Appellee's Motion to Suppress breath test results is AFFIRMED.

DONE AND ORDERED in Chambers at Fort Lauderdale, Broward County, Florida, this 16th day of August, 1989.

Attachment 1

STATE OF FLORIDA
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES
OFFICE OF LABORATORY SERVICES
IMPLIED CONSENT PROGRAM
P.O. BOX 210
JACKSONVILLE, FLORIDA 32231

FEDERAL SIGNS INTOXILYZER

MODEL 5000
OPERATIONAL CHECK LIST

NOTE: Instrument programmed to automatically display Model Number, Serial Number, and Time, when heated up to operate.

1. Display is flashing message, "Push Start Test Button"—Do as flashing display instructs —PUSH START TEST BUTTON.

2. Display is flashing message, "Insert Card" - INSERT EVIDENCE CARD.

3. Automatically runs "Air Blank" .000.

4. Display is flashing message, "Blow Sample". Connect mouthpiece and have subject blow into mouthpiece until the tone stops.

5. Subject Test—Display gives blood alcohol reading.

6. Automatically runs "Air Blank" .000.

7. Display is flashing message, "Blow Sample". For a second test, have subject repeat step number 4.

8. Automatically runs "Air Blank" .000.

9. Test Complete—Attach PRINTOUT to check list.

Note: The two (2) breath tests shall be run no more than five (5) minutes apart and the two results are acceptable if within + or − 0.02%. If more than 0.025 difference, a third (3) breath test or a blood test should be given and the results recorded.

HRS Form 1615, Oct 84