## STATE OF FLORIDA v PHILLIPS and WILLIAMS
### Case No. 89-22693 CF 10 A & B
Seventeenth Judicial Circuit, Broward County
July 13, 1990

### OPINION OF THE COURT

J. LEONARD FLEET, Circuit Judge.

### ORDER ON DEFENDANTS' MOTION TO RAISE THE DEFENSE OF CONSENT

Defendants, STEVEN PHILLIPS and COREY WILLIAMS, filed a joint pleading entitled "Motion to Allow Presentation of a Consent Defense". The motion challenges the constitutional validity of a portion of F.S. 800.04.

### *FACTS*

Under circumstances that, on the surface, do not seem to suggest the utilization of force by either defendant, J.G., a fifteen year old female,

found herself at the house of defendant Phillips. While engaged in sexual activity with Mr. Williams, J.G. observed Mr. Phillips to be videotaping the copulation. After having sexual intercourse with both defendants, J.G. left the premises, apparently without interference from either defendant.

Both defendants were arrested for committing sexual battery upon J.G. After bond hearing, during which the videotape was played for the Court, formal charges of Indecent Assault Upon a Child Less Than Sixteen Years of Age were filed.

Florida Statute 800.04(2), pursuant to which the charges in this case are made, provides, in relevant part:

Any person who commits an act defined as sexual battery under s. 794.011(1)(h) upon any child under the age of 16 years without committing the crime of sexual battery is guilty of a felony of the second degree. . . . *Neither the victim's lack of chastity nor the victim's consent is a defense to the crime proscribed by this section.* [1]

It is to the denial of consent as a defense toward which the motion of the defendants is addressed.

## STANDING

A threshold issue is whether these defendants are vested with standing to raise the issues now presented to the Court. Put another way, the question to be first answered is:

Are the defendants within the class of persons to whom the law gives the privilege to challenge whether a person under the age of sixteen years can give valid consent to an act constituting an indecent assault?

The State challenges the legal right of the defendants herein to assert a claim of privacy on the part of J.G., which privacy right would give her the opportunity to engage in sexual activity if she so chose. Authority for such assertion are cases decided pursuant to a claimed violation of the Fourth Amendment of the United States Constitution.[2] Such reliance is misplaced when the issues now before the Court are carefully examined.

---

[1] F.S. 794.011(h) provides: The term "sexual battery" means oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object. . . .

[2] *Rakas v Illinois,* 439 U.S. 128 (1978); *United States v Salvucci,* 448 U.S. 83 (1980); *Rawlings v Kentucky,* 448 U.S. 98 (1980); *Mansfield v State,* 398 So.2d 292 (Fla. 3d DCA 1980).

Faced with a blatantly discriminatory, albeit historically customary, restriction prohibiting non-Caucasians from acquiring ownership in certain real estate, the United States Supreme Court determined such provisions to be unenforceable in courts of equity.[3]

The theory underlying such ruling was the denial of equal protection of the laws to those who did not fit the term "non-Caucasians," however that derogatory phrase is defined. An action at law for damages was brought when a party permitted premises subject to a covenant prohibiting the occupancy of property by a non-Caucasian to be occupied by persons falling within the express prohibition. The complainant in such action was a successor in interest of the signer of the restrictive covenant. The United States Supreme Court concluded such action would not lie.[4] When addressing the propriety of one to vindicate the constitutional rights of some third party, the court made clear such action could not be taken unless the suing party is "himself injured by its operation".[5] Indeed, it has been recognized that such third person may be "the only effective adversary" to raise a particular issue.[6]

An excellent example of "the only effective adversary" concept is found in *Griswold v Connecticut*.[7] *Convicted as accessories for giving information, instruction, and medical advice to married persons regarding the prevention of conception, the executive director and medical director of the Planned Parenthood League were deemed to have standing to question the constitutionality of a Connecticut law forbidding the use of contraceptives. The Connecticut law was struck down as an unconstitutional intrusion upon the right of marital privacy.*

The principle that a "third party" is an appropriate entity to assert the rights of another when such "third party" can demonstrate a direct interest therein was reinforced in *Eisenstadt v Baird*.[8] There a person not approved by statute to do so gave contraceptive vaginal foam to an unmarried adult woman. The defendant was determined to have standing to assert the rights of unmarried persons denied access to

---

[3] *Shelley v Kraemer,* 68 S.Ct. 836 (1948)

[4] *Jackson v Barrows,* 73 S.Ct. 1031 (1953)

[5] Id. at p. 1034

[6] Id. at 1036; *Sullivan v Little Hunting Park, Inc.,* 90 S. Ct. 400, 404 (1969)

[7] 85 S.Ct. 1678 (1965)

[8] 92 S.Ct. 1029 (1972)

contraceptives because their ability to obtain them would be materially impaired if the statute under attack was allowed to be enforced.[9]

In the matter presently before the Court it is clear these defendants represent all others who might now, or in the future, be accused of violating any portion of F.S. 800.04 under circumstances wherein consent on the part of the minor is a viable issue. It is, therefore, the explicit finding of this Court that these defendants are vested with standing to assert the privacy interest of the alleged victim in this case.

## PRIVACY vs. COMPELLING STATE INTEREST

In 1980, the people of Florida saw fit to amend their Constitution for the purpose of guaranteeing the right of privacy. In relevant part, Article I, Section 23 states:

Every natural person has the right to be let alone and free from governmental intrusion into his private life except as otherwise provided herein.

As made abundantly clear in *Winfield v Division of Pari-Mutuel Wagering*:[10]

The citizens of Florida opted for more protection from governmental intrusion when they approved article I, section 23, of the Florida Constitution. This amendment is an independent, freestanding constitutional provision which declares the fundamental right to privacy. Article I, Section 23, was intentionally phrased in strong terms. The drafters of the amendment rejected the use of the words "unreasonable" or "unwarranted" before the phrase "governmental intrusion" in order to make the privacy right as strong as possible. Since the people of this state exercised their prerogative and enacted an amendment to the Florida Constitution which expressly and succinctly provides for a strong right of privacy not found in the United States Constitution, it can only be concluded that the right is much broader in scope than that of the Federal Constitution.

The Florida Supreme Court, when making reference to the adjective phrase "unreasonable and unwarranted" as it might modify the term "governmental intrusion", obviously had in mind the language of the Fourth Amendment of the Federal Constitution[11] and the language of

[9] Id. at 1033-1035

[10] 477 So.2d 544, 548 (Fla. 1975)

[11] "The right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable* searches and seizures, shall not be violated, and no warrant shall

Article I, Section 12 of of the Florida Constitution.[12] Reinforcing the conclusion of the *Winfield* court that Article I, Section 23 is to be interpreted in the strongest of terms is this reality: the privacy amendment is *not* required to be interpreted in a manner designed to establish consistency with the United States Constitution, a requirement that exists in Article I, Section 12![13]

As recently as October 12, 1989, the Florida Supreme Court, in *Shaktman v State*,[14] reaffirmed the deference to be given by Florida's Courts to the strong language of Article I, Section 23. The *Shaktman* court agreed with the *Winfield* court that privacy rights in Florida are to be zealously guarded. Solely upon the shoulders of the state rests ". . . [t]he burden of demonstrating that the challenged regulation serves a compelling state interest and accomplishes its goal through the use of the least intrusive means."[15] Both *Winfield* and *Shaktman* establish, conclusively, that ". . . the compelling state interest represent(s) a strong standard of review, *one of the more demanding placed upon the government*[16] (emphasis added).

Notwithstanding its burden to do so, the State, in the case *sub judice,* has completely ignored its responsibility to demonstrate the legal justification for denying to an accused, in a proper case, the defense of consent to the crime charged herein. An oblique reference to the objective presumably sought to be obtained by the wording of F.S.

---

issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[12] "The right of the people to be secure in their persons, houses, papers and effects against *unreasonable* searches and seizures, and against the *unreasonable* interception of private communications by any means, shall not be violated. No warrant shall be issued except upon *probable cause,* supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of the evidence to be obtained. . . ." (emphasis added)

[13] ". . . This right *shall* be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court. Articles or information obtained in violation of this right shall not be admissible in evidence *if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States constitution.* (emphasis added) E.g. *State v Norman,* 545 So.2d 465 (Fla. 4th DCA 1989).

[14] 553 So.2d 148

[15] *Winfield, supra,* at 547; *Shaktman, supra,* at 151

[16] *Winfield, supra,* at 548; *Shaktman, supra,* at 151.

800.04 is found in the State's allusion to a portion of *In re T.W.*[17] The weakness of such allusion is the failure of the State to have called to the attention of this Court the *entirety* of the reference (a practice that tends to reduce one's credibility with a reviewing court!).

In full, the cited portion of *In re T.W.* reads:

We agree that the state's interests in protecting minors and preserving family unity are worthy objectives. *Unlike the federal Constitution, however, which allows intrusion based on a "significant" state interest, the Florida Constitution requires a "compelling" state interest in all cases where the right to privacy is implicated.*[18] (emphasis added)

It has been long acknowledged that the true function of Florida's so-called "Statutory Rape" law (F. S. 794.05) was to protect ". . . the virginity of young maidens. . . ."[19] Examination of case law published since *Simmons, supra,* reveals no change in philosophy concerning the intended function of F.S. 794.05 and, by analogy, F.S. 800.04. If such is the intended function of those criminal statutes which rely upon the language of F.S. 795.04 for definition, then it is difficult to understand how such laws meet the two pronged test established in *Winfield.*

*Simmons, supra,* makes it abundantly clear that protection of a woman's virginity has always been the goal sought to be achieved by statutes such a F.S. 794.05 and F. S. 800.04. The denial of the defense of consent did nothing to change this goal, no matter how plaintive may be the plea of the State. Any belated attempt to speak of some other purpose being the reason for the denial of the defense of consent is just that: a belated attempt!

This Court agrees with the contentions of defendants that (1) women are not chattels (the ownership of which can be vested in a man), (2) virginity has no tangible value (thereby eliminating the concept of theft), (3) invalidation of a minor's consent to sexual intercourse fails as a means of protecting such minors from the inappropriate advances of a pedophile.[20]

---

[17] 552 So.2d 1186, 1195 (Fla. 1989)

[18] F.n. *15, supra*

[19] *Simmons v State,* 10 So.2d 436 (Fla. 1942)

[20] See Comment, *Forcible and Statutory Rape: An Exploration of the Operation and Objectives of the Consent Standard,* 62 Yale L.J. 55, 76 (1952); Comment, *Rape Reform and a Statutory Consent Defense,* 74 J. Crim. L. and Criminology 1518 (1983); Note, *The Constitutionality of Statutory Rape Laws,* 27 UCLA L. Rev. 757, 773-74 (1980).

124

The currently popular justification given for the denial of consent as a defense in cases such as that now before the Court is the prevention of teenage pregnancy. When the challenged statute is viewed as part of an express state statutory scheme to protect teenage girls from becoming pregnant, the U.S. Supreme Court has upheld the statute.[21] Such justification is simply not available to the State in the present case since F.S. 800.04 criminalizes conduct which cannot possibly result in pregnancy![22]

Without a doubt, education - teaching the wisdom of refraining from sexual activity until maturity or (since one must confront reality when dealing with sexual issues) the advisability of using contraceptives during sexual intercourse unless the parties consciously desire to procreate - are much less intrusive, and certainly more effective, means of achieving a goal of preventing teenage pregnancies.

This Court now finds the second prong of the *Winfield* test is not met by the denial of the defense of consent in the case *sub judice.*

## STARE DECISIS

The State advances the argument that principles of *stare decisis* control the issues raised by the defendants. This Court wholeheartedly agrees with the doctrine of *stare decisis;* it does not agree that the cases offered by the State are controlling upon the issue under review.

In 1981, the United States Supreme Court, in *Michael M. v Superior Court of Sonoma County,*[23] held constitutional a California statute which made criminal ". . . an act of sexual intercourse accomplished with a female not the wife of the perpetrator, where the female is under the age of 18 years".[24] The sole thrust of the constitutional attack upon the statute was gender bias in violation of the equal protection clause of the Fourteenth Amendment of the Federal Constitution.[25] Such discrimination was approved by the U.S. Supreme Court. Florida's statutory rape statute, F.S. 794.05,[26] as well as, F.S. 800.04, are gender neutral, thus rendering *Sonoma County* inapplicable.

---

[21] *Michael M. v Superior Court,* 101 S.Ct. 1200 (1980)

[22] I.E., oral or anal penetration or union with the sexual organ of another and homosexual acts of any kind.

[23] 101 S.Ct. 1200

[24] Section 261.5, California Penal Code Annotated (West Supp. 1981)

[25] ". . . nor shall any State . . . deny to any person within its jurisdiction the equal protection of the laws."

[26] "Any *person* who has unlawful intercourse with any unmarried *person*. . . ."

*State v Lanier*[27] is similarly not applicable to the question raised in the instant case. Absolutely no reference was made by the *Lanier* court to any issue of constitutionality *vel non* of F.S. 800.04. For aught that appears in the body of the *Lanier* opinion, the impact of Article I, Section 23 of Florida's Constitution upon F.S. 800.04 was not presented. Also worthy of consideration on the issue of applicability is the fact that *In re T.W., supra,* was decided several years after *Lanier.* The concepts of *T.W.* were obviously not in the mind of either the litigants or the members of the judiciary at the time of *Lanier.* No citation of authority is needed for the proposition that reliance upon a case is inapposite when the case relied upon deals with issues other than those pending in the case under litigation.

A similar conclusion is obtained when one reads carefully the content of the Second District Court of Appeal in *State v Sorakrai.*[28] There the issue before the court dealt with the right of an accused to present testimony of his good faith belief that the alleged victim was apparently over the age of sixteen years notwithstanding reality to the contrary. The *Sorakrai* court accepted the literal words of F.S. 800.04(2), followed the literal holding of *Lanier, supra,* and reached the simplistic conclusion that Mr. Sorakrai was up the proverbial creek without the necessary means of locomotion! .

Once again, it appears the constitutional issues generated by Article I, Section 23 were not presented for resolution. Unless squarely presented to a court of competent jurisdiction, and unless shown to be essential to the solution of the decision then pending, courts will not address the fundamental constitutionality of a statute.[29]

Florida appears to be very ambivalent on just what a minor is capable of deciding. Notwithstanding the disability of nonage,[30] an unwed pregnant mother, *regardless of age,* can give valid consent to medical and surgical services for herself and her child,[31] can execute a valid consent to the adoption of her child,[32] and can decide whether to

---

[27] 464 So.2d 1192 (Fla. 1985)

[28] 540 So.2d 294 (Fla. 2d DCA 1989)

[29] *Jones v Sarasota,* 89 So.2d 346 (Fla. 1956)

[30] The age, in law, under which one is deemed not to be possessed of contractual capacity.

[31] F. S. 743.065

[32] *Re Adoption of Brock,* 25 So.2d 659 (Fla. 1946); *Pugh v Barwick,* 56 So.2d 124 (Fla. 1952)

continue or to terminate her pregnancy.[33] Given the enormity of the consequences of each of these decisions, how it can be gainsaid that a person under the age of 16 is conclusively presumed to be without the capacity to consent to engaging in sexual intercourse? Granted that such activity might be both unwise and immoral, the issue still remains whether the Legislature can, in the absence of supporting empirical data and in the absence of a demonstrable plan to protect immature persons from themselves or others, arbitrarily establish an age beneath which one cannot consent to become sexually active.

Underscoring the incongruity of F.S. 800.04 is the fact that a person beneath the age of sixteen has been deemed capable of waiving other protections documented in the Florida and Federal Constitutions.[34] Further adding to the apparent lack of logic underlying the challenged statutory language is the reality that Florida has approved the execution of a person who was seventeen years old at the time the crime was committed.[35] In the *LeCroy* case, great reliance was placed upon the trial court's finding that the defendant, although young, ". . . was mentally and emotionally mature and . . . understood the distinction between right and wrong and the nature and consequences of his actions. . . ."[36] Additional support for upholding the death sentence in *LeCroy* was found in the provision of F.S. 39.02(5)(c), i.e., a child of *any* age indicted for a crime punishable by death or life imprisonment ". . . shall be tried and handled in every respect as if he were an adult."

In the body of its decision, the *LeCroy* court adverted[37] to the United States Supreme Court decision in *Thompson v Oklahoma*.[38] In *Thompson,* the death sentence of a person who was fifteen years old at the time of the commission of the homicide was set aside. "In determining whether the categorical Eighth Amendment prohibition applies, this Court must be guided by the 'evolving standards of

---

[33] *In re T.W., a Minor,* 551 So.2d 1186 (Fla. 1989)

[34] *State v S.L.W.,* 465 So.2d 1231 (Fla. 1985) (fourteen year old deemed capable of waiving the right against self incrimination and the right to assistance of counsel); *State v Clayton,* 478 So.2d 436 (Fla. 5th DCA 1985) (sixteen year old could validly waive *Miranda* rights

[35] *LeCroy v State,* 533 So.2d 750 (Fla. 1988)

[36] Id. at page 755

[37] Id. at 757 - 758

[38] 108 S.Ct. 2687 (1988)

decency that mark the progress of a maturing society'. . . ."[39] According to the position of the State in the instant case, a minor can validly waive Constitutional protections and wind up being incarcerated but that same minor is deemed incapable of deciding when to become sexually active! The contradiction is apparent.

There can be no argument with the proposition that, in the exercise of its police power, the state can provide for the correction, care, custody, protection, and maintenance of children.[40] What is here questioned, is whether the State, when exercising its police power, can arbitrarily deprive an accused of a viable defense in a case such as that which is presently the subject of review.

A legislature cannot validly enact a statute contrary to controlling provisions of the State and Federal Constitutions.[41] The power of the judiciary to determine the constitutional acceptability of a statute derives from the supremacy of the relevant Constitution and the duty of the judiciary to declare such supremacy when its jurisdiction is invoked in a situation in which the Constitution and a legislative act cannot both stand together.[42]

Let there be no mistake about the personal feelings of this Court: sexual activity is both a privilege and a responsibility given us by a Higher Authority, regardless of the name given to such entity. Sexual activity should be engaged in only by those possessed of sufficient emotional maturity to deal with the consequences thereof regardless of age. The reality of life is that people will, irresponsibly, partake of sex without regard to that which might follow!

In sum, the issue here is: can the state arbitrarily withdraw a viable defense from one accused of criminal sexual activity? This Court thinks not. Even though this Court does not like the consequences of this decision, the obligations of being a member of the judiciary mandate the making of a decision in accordance with the law. "It is the duty of the court to strike down a statute . . . which is found to be in positive conflict with some provision of organic law, *irrespective of the wisdom of such legislation and the consequences of the determination.*"[43] *(emphasis added)*

---

[39] Id. at 2688, quoting from *Trop v Dulles* 356 U.S. 86, 101

[40] 25 Fla. Jur. 2d 2234, Fam. Law Sec. 193

[41] 10 Fla. Jur. 2d 269, Con. Law Sec. 269

[42] Id. at p. 271-272, Sec. 47

[43] 36 Fla. Jur. 2d 273, Con. Law Sec. 49

## CONCLUSION

The foregoing considered, it is

·ORDERED AND ADJUDGED:

(1) Florida Statute 800.04, insofar as it deprives an accused of the opportunity to raise the defense of consent, is unconstitutional for reason that it is in conflict with Article I, Section 23 of the Constitution of this state.

(2) Defendants herein will be permitted to submit to the fact finder in this cause evidence pertaining to the following issues:

(a) was J.G., at the time the indecent assault allegedly occurred, possessed of sufficient maturity to consent thereto?

(b) if the answer to the preceding proposition is in the affirmative, did J.G. validly consent to the activity charged against the Defendants?

This cause is stayed for fifteen days from the date hereof to allow the State of Florida the opportunity to initiate such appellate proceedings as it deems necessary and appropriate.

DONE AND ORDERED in Chambers, this 13th day of July, 1990, at Ft. Lauderdale, Broward County, Florida.