## STATE OF FLORIDA v AVILA
## Case No. 9002168CFAES
Sixth Judicial Circuit, Pasco County

November 2, 1990

### OPINION OF THE COURT

WAYNE L. COBB, Circuit Judge.

### *ORDER DENYING DEFENDANT'S MOTION TO ALLOW CONSENT DEFENSE*

In this case, the defendant, Marco Antonio Avila, is charged by information with two counts of committing a lewd and lascivious act upon a child under the age of sixteen years contrary to Section 800.04(2), Florida Statutes. Specifically, he is charged with having sexual intercourse with the victim while the victim was fifteen years old.

Section 800.04(2), Florida Statutes, provides:

Any person who: (2) Commits an act defined as sexual battery under § 794.011(1)(h) upon any child under the age of 16 years without committing the crime of sexual battery is guilty of a felony. Neither the victim's lack of chastity nor the victim's consent is a defense to the crime proscribed by this section."

In his motion, the defendant alleges that the provision of Section 800.04, Florida Statutes, that eliminates the defense of consent violates the victim's right to privacy guaranteed by Article I, Section 23 of the Florida Constitution as construed by the Florida Supreme Court in the case of *In Re: T.W., a Minor,,*[1] and consequently his right to due process.

Article I of the Florida Constitution is the Declaration of Rights. Section 23 of Article I reads:

"Right of Privacy.—Every natural person has the right to be let alone and free from governmental intrusion into his private life except as otherwise provided herein."

In the case of *In Re: T.W., A Minor*[1] (to be hereinafter referred to simply as *T.W.*), the Florida Supreme Court held that a statute requiring a minor to obtain either parental consent or the approval of a judgment before the minor could consent to a medically induced abortion violated the right of privacy guaranteed by Article I, Section 23 of the Florida Constitution.

The motion in this case was precipitated by a decision of Circuit Judge J. Leonard Fleet of the Seventeenth Judicial Circuit in the case of *State v Phillips and Williams.*[2] In a very well reasoned response to a similar motion in his case, Judge Fleet found that the decision of the Florida Supreme Court in *T.W.* must be read so as to grant to any female child in the State of Florida the constitutional right to consent to sexual intercourse, which right may supersede any statute to the contrary, and that therefore Section 800.04, Florida Statutes, is unconstitutional insofar as it deprives an accused of the opportunity to raise the defense of consent.

Judge Fleet's order is not binding on this court; *i.e.,* it is not *stare decisis.* However, Judge Fleet has faithfully served this state as a trial judge for many years and has time after time proved himself to be an intelligent, learned, and honest jurist, dedicated to a jurisprudence that will promote the common weal of this state. Therefore, this court is inclined to afford great deference to his decision.

Furthermore, the logic of Judge Fleet's decision is impeccable. In

---

[1] 551 So.2d 1186 (Fla. 1989)

[1] id

[2] 42 Fla. Supp. 2d 119 (17th Circuit Ct., 1990)

essence, Judge Fleet reasons that in *T.W.* the Florida Supreme Court decided that Florida's privacy amendment overrides all state and family interests in protecting our children except those interests that are "compelling." Those interests which are only "significant", such as the interests of the parents of a child in the child contracting for and consent to a medical abortion, do not overridge the child's constitutional right of privacy.[1] Certainly, Judge Fleet concludes, it is reasonable and logical then to conclude that if our constitution grants to our children the right to terminate pregnancies without consulting with their parents, that same constitution must give to our children the "privacy" right to copulate so as to get pregnant in the first place. And if our children have a constitutional right to copulate without state or parental interference, the defendants in his case had the right to rely on that inviolable (except in instances of "compelling" state interest) right of the female victims at times when those defendants were passionately attracted to their youthful victims. Ergo the legislature of the State of Florida is without authority to prohibit the defendants in his case from raising the defense that the victim consented to her loss of virtue.

## ISSUES

The duty of this court is limited to animate justice; *i.e.,* to apply the broad principles found in our positive law *(i.e.,* inanimate law) to singular and specific actions of men and women. This court is bound to follow precedent and the animate and inanimate justice of higher courts. This is the doctrine of *stare decisis* which is central to our common law jurisprudence. But when there is no case decided by a higher court that controls the decision of this court, this court's duty is to predict how the Florida Supreme Court will react to the singular set of facts before this court.

There are two questions before this court, as there were before Judge Fleet. The first question is: Does the defendant have standing to raise the constitutional rights of the victim in asserting his defense?

## STANDING

This court agrees with Judge Fleet that the defendant has standing to challenge the constitutionality of Section 800.04, Florida Statutes. This defendant has a direct interest in the operation of this statute and is the only person who can effectively raise and argue the issue in this case. Therefore, this court finds that this defendant is vested with

---

[1] *T.W.,* id. at 1194, et seq.

standing to assert the constitutional privacy interest of the victim in this case.[1]

## DEFENSE OF CONSENT

In essence, the second issue before this court is as follows: The Florida Supreme Court has said that the right of privacy contained in the Florida Constitution permits a female child to consent to and contract for a medical procedure to cause expulsion of a fetus contained in her womb without her consulting with her parents or getting their permission and, perhaps, any legislative attempt to delimit that right is null and void. Is this court, then, to predict that when presented with the issue currently before this court, the Florida Supreme Court will expand this concept of privacy to preclude the legislature from barring to this defendant the use of the defense that the victim in this case consented to his acts?

## RULING

This court disagrees with Judge Fleet as to the constitutionality of Section 800.04, Florida Statutes. Judge Fleet approached this problem as an ordinary instance of predicting the response of a higher court to a singular set of facts, just as he has done thousands of times in his tenure on the bench. If this court were to approach this issue as an ordinary issue of animating justice based on precedent, it would have to follow Judge Fleet's lead. This court is convinced, however, that *T.W.* is not an ordinary judicial decision, but rather is an anomalous political decision by the highest appellate court in this State. For several reasons this court believes that the basic premises of *T.W.* will not be expanded to apply to the criminal law of this State, at least not in the manner proposed by this defendant.

## REASONING—I

The first reason for why this court believes that the Florida Supreme Court will not expand the constitutional right of privacy to allow the defense of consent to be used in this and similar cases is that almost 3,000 years of Western philosophic history favors societal protection of the virtue of children.

Mr. Justice Holmes once said:

"Delusive exactness is a source of fallacy throughout the law. By

---

[1] See *Jackson v Barrows,* 346 U.S. 149, 97 L.Ed.1586, 73 S.Ct. 1031 (1953); *Griswold v Connecticut,* 381 U.S. 479, 14 L.Ed.2d 510, 85 S.Ct. 1678 (1965), *Eisenstadt v Baird,* 405 U.S. 438, 31 L.Ed.2d 349, 92 S.Ct. 1029 (1972).

calling a business 'property' you make it seem like land, and lead up to the conclusion that a statute cannot substantially cut down the advantages of ownership existing before the statute was passed."[1]

So even though the language used by the Florida Supreme Court in its opinions in *T.W.* appears to be without qualification, one must still look further. Since the *T.W.* decision is a radical departure from established judicial traditions, one first needs to briefly examine the philosophic history of Western justice.

Isidore of Seville (c. 560-636), in his encyclopedic *Entomologies* says:

"Laws were made that in fear thereof human audacity might be held in check, that innocence might be safeguarded in the midst of wickedness, and that the dread of punishment might prevent the wicked from doing harm."[2]

Thomas Aquinas (c. 1225-74), in his monumental work *The Summa Theologics,* philosophizes:

"[M]an has a natural aptitude for virtue; but the perfection of virtue must be acquired by man by reasons of some kind of training. Thus we observe that man is helped by industry in his necessities, for instance, in food and clothing. Certain beginnings of these he has from nature, viz., his reason and his hands; but he has not the full complement, as the animals have, to whom nature has given sufficiency of clothing and food. Now it is difficult to see how man could suffice for himself in the matter of his training: since the perfection of virtue consists chiefly in withdrawing man from undue pleasures, to which above all man is inclined, and especially the young, who are more capable of being trained. Consequently a man needs to receive this training from another, whereby to arrive at the perfection of virtue. And as to those young people who are inclined to acts of virtue, by their natural disposition, or by custom, or rather by the gift of God, parental training suffices, which is by admonitions. But since some are found to be depraved, and prone to vice, and not easily amenable to words, it was necessary for such to be restrained from evil by force and fear, in order that, at least, they might desist from evil-doing, and leave others in peace, and that they themselves, by being habituated in this way, might be brought to do willingly what hitherto they did from fear, and thus become virtuous. Now this kind of training, which compels through fear of punishment, is the discipline of laws. Therefore in order that man might have peace

---

[1] *Truax v Corrigan,* 257 U.S. 312, 66 L.Ed. 254, 167, 42 S.Ct. 124 (1921)

[2] *Etym v 20*

and virtue, it was necessary for laws to be framed: for, as the Philosopher says *(Polit.* i. 2), as man is the most noble of animals if he be perfect in virtue, so is he the lowest of all, if he be severed from law and righteousness'; because man can use his reason to devise means of satisfying his lusts and evil passions, which other animals are unable to do."[1]

Alexander Hamilton in *The Federalist,* No. 15 rhetorically asks: "Why was government instituted at all?" And then he answers: "Because the passions of men will not conform to the dictates of reason and justice without restraint."

Society today needs Section 800.04, Florida Statutes, to protect the virtue of its children in order to "insure domestic tranquility" and to "maintain public order."[1] The passions of adult men and women need to be restrained by eliminating the use of consent as a defense to criminal charges of having sexual relations with children to keep them from taking advantage of the innocence and gullibility of children.

Furthermore, our society recognizes the needs to treat children differently from adults in many ways. In Florida today, as in every state of this union, we treat children differently from adults in our criminal laws,[2] our domestic relations law,[3] our probate and guardianship laws,[4] our contract laws,[5] and our education laws. It is unthinkable that a right of privacy contained in our organic law would be construed, for example, to prohibit the State from mandating that children attend school for a minimum period of time; or prohibit the State from mandating that children wear appropriate clothing when they attend school so as to minimize the distraction of other students from the educational purpose of their attendance. Of course, the reason why it would be unthinkable, except for the most rabid libertarianists among us, to extend the organic right of privacy to the extreme suggested above is because the purpose of having a constitution in the first place is not to outlaw government, but as stated in the preamble to the Florida Constitution to "perfect our government". To read the

---

[1] Pt. I-II Q, Art. I. Note: Aquinas refers to Aristotle as "the Philosopher" through *The Summa Theologica.*

[1] Preamble to the Constitution of the State of Florida.

[2] *e.g.,* see Chap. 39, Fla. Stat.

[3] *e.g.,* see Chap. 741, Fla. Stat.

[4] *e.g.,* see Chap. 732, *et. seq.*

[5] *e.g.,* see Chap. 743, Fla. Stat.

Declaration of Rights in our constitution literally and absolutely is to completely lose touch with the Western philosophy of government and law and with the basic purpose of having a constitution. Many of these laws provide special protection for the rights and virtues of children. Society needs its children to have that special protection.

## REASONING—II

The second reason why this court believes that the Florida Supreme Court will not expand the constitutional right of privacy to allow the defense of consent to be used by this defendant and defendant's in similar cases is that *T.W.* itself is out of step with Western philosophy and is only a quirk of the current "Age of Squalor"[1] *T.W.* is wrong and this court believes that it will be distinguished with more zest than it will be followed.[2]

*T.W.* is morally wrong. Western law has recognized the reciprocal responsibility between parents and their children since God instructed Moses on Mount Sinai and one of His basic Commandments was:

"Respect your father and your mother, so that you may live a long time in the land that I am giving you."[3]

Yet, in *T.W.* the Florida Supreme Court dictated that a female child in Florida may obtain a medical abortion without the consent or even knowledge of her parents. This is a radical departure from the established precepts of Western philosophy and jurisprudence; indeed, the departure is so radical as to convince this court that the *T.W.* decision will not be expanded to apply to the criminal law of this State as advocated by the defendant in this case.

*T.W.* is politically wrong. It is politically wrong for courts to use the authority of constitutional construction to fabricate positive, inanimate law as the Florida Supreme Court did in *T.W.* This is so for several reasons:

First, legislatures operate within a process that is more suitable than courts to allow open discussion and consideration of the effects and ramifications of laws under consideration.

Second, lawmakers are better suited to judge in the abstract and of future events than are judges and justices. Judges and justices are more suited to sit in judgment of things present and with singular facts and consequences.

---

[1] See *The Tampa Tribune* editorial, Sunday, October 7, 1990, "Commentaries".

[2] To paraphrase Lord Birkenhead.

[3] Exodus 20:12; Dt. 5:16.

Third, when courts fabricate law based on constitutional precepts, it peculiarly stifles further debate and makes it much more difficult and frustrating for society to correct bad laws. The *Dred Scott* decision of the United States Supreme Court comes immediately to mind. That decision constitutionally legitimizing slavery surely contributed to the frustration of both the North and South that led to the war between the states, rather than to legislative correction of past wrongs.

*T.W.* is also wrong because it flies in the face of divine and natural law. "Thou shalt not kill the innocent" is a basic tenant of divine and natural law. *T.W.* legalizes the killing of the most innocent of the innocent, unborn babies.

Our justice system was built on a natural law foundation. That natural law foundation supports our system of justice. The preamble to the Florida constitution says that our constitution is established "being grateful to Almighty God for our constitutional liberty." Our Pledge of Allegiance recognizes that we are "one nation, under God." To ignore that foundation is to invite disaster. "Blessed is the nation whose God is the Lord."[1] Pope John Paul II, on his first visit to Warsaw Pact country since the collapse of communism in that region, said: "Without a sense of the transcendent, any type of culture remains a formless fragment, like the unfinished Tower of Babel."[2]

This Court must recognize as contrary to the thesis that the Florida Supreme Court will not expand the constitutional concept of privacy that the Court in *In Re: Guardianship of Browning v Herbert*[3] has recently expanded that right to allow families to kill their older members without any judicial intervention under some circumstances. But supporting this thesis, see *State v Long*[4] which is an even more recent decision of the Florida Supreme Court finding that the constitutional right of privacy will not be expanded to protect sellers of obscene materials.

### REASONING—III

A third reason why this court believes that the Florida Supreme Court will not expand the constitutional right of privacy to allow the defense of consent to be used in this and similar cases is on a more

---

[1] Ps. 33:12.

[2] *St. Petersburg Times,* Sunday, Apr. 22, 1990 at p. 23A.

[3] 25 FLW S459 (Sept. 14, 1990).

[4] 15 FLW S520 (Oct. 12, 1990).

138

pragmatic level. Former Justice of the United States Supreme Court, William O. Douglas, in his book *Stare Decisis* said:

"Even for the experts law is only a prediction of what judges will do under a given set of facts—a prediction that makes rules of law and decisions not logical deductions but functions of human behavior."

Because of the current composition of the Florida Court and because of the merit selection method by which Florida Supreme Court Justices are currently selected, that Court is very sensitive to the pressures of the neo-feminist movement and other special interest groups. The National Organization of Women (NOW) doesn't like Judge Fleet's decision. Diane Wilkinson, director of the National Organization for Women for the Southeast United States has been quoted as saying that Judge Fleet's ruling is an attack on abortion rights and "The idea of linking the two things (abortion and statutory rape) is just preposterous to me."[1] Therefore, this court predicts that the Florida Supreme Court will not adopt Judge Fleet's reasoning.

## CONCLUSION

In his novel *The Brothers Karamazov*, Dostoevsky has Ivan tell his brother: "If God doesn't exist, all things are permitted." Only if the Florida Supreme Court has truly cast God from out of Florida jurisprudence will children in Florida have a "right of privacy" to lose their virtue whenever and with whomever they wish and to indiscriminately kill the results of that loss of virtue. This court predicts that there remains in Florida jurisprudence some remnants of the transcendent.

For the reasons stated above, it is therefore,

ORDERED that the motion of the defendant to allow to him a defense of consent in this case is hereby denied.

Done and ordered in Dade City, Florida, on this 2nd day of November, 1990.

---

[1] *The Tampa Tribune,* Saturday, Sept. 29, 1990, pg. 4A.