PARIENTE, Judge.
Defendant appeals the denial of his motion to suppress cocaine. We conclude that the cocaine obtained as the result of an unlawful strip search should have been suppressed because the strip search constituted a clear and substantial violation of section 901.211, Florida Statutes (1993), a statute designed to regulate police conduct.
Defendant, a juvenile, was placed under arrest as a result of three outstanding warrants arising from traffic matters. At the time of arrest, he and his friends were walking on the street in Riviera Beach. The arresting officer knew defendant and his friends who always hung around in the same area, known by the officer to be a high drug area. After seeing defendant earlier in the day, the officer had done a computer check on defendant for warrants.
The officer arrested defendant, handcuffed him, and performed a pat-down search for weapons. Not finding any contraband or weapons, the officer felt comfortable placing defendant in the patrol car. The officer *151 transported defendant to the Riviera Beach police station to fill out paperwork. With defendant still handcuffed, the officer had him remove his shoes and socks and then did a more thorough pat-down for weapons. Although the officer found no weapons during the pat-down, he noticed what felt like a plastic baggie containing hard objects between defendant’s buttocks. He later described the ziploc end of the baggie as rolled up like a cylinder, which, based on his experience, is typical of the way people keep cocaine.
Upon feeling and squeezing the baggie, the officer instructed defendant to “drop his pants.” Defendant complied. The officer then saw the tip of a baggie sticking out from between defendant’s buttocks. He requested that defendant spread his legs so he could see the baggie, and when defendant did not comply, the officer spread his buttocks. The baggie fell to the ground. The officer did not wear gloves or wash his hands before conducting the strip search. During the strip search, an adult male inmate was also present in a holding cell. The baggie was found to contain five cocaine rocks.
The officer had worked for the City of Riviera Beach for five months and previously as a jailer in New York for five years. As a jailer, he performed both strip searches and body cavity searches. The officer testified that there was a verbal policy in the Riviera Beach police department requiring a supervisor’s permission before performing a strip search. However, in the past, his supervisor had told the officers, “if you feel something like that, you can just go get it.” The officer was unaware that other inmates should not be present during a strip search. The officer testified that if the cocaine had not been discovered, defendant would have been transported to the sheriffs department to complete the paperwork on the warrant and then he would have been released to his mother.
Section 901.211 mandates specific procedures before a strip search may be conducted. Section 901.211 provides:
(1)As used in this section, the term “strip search” means having an arrested person remove or arrange some or all of his or her clothing so as to permit a visual or manual inspection of the genitals; buttocks; anus; breasts, in the case of a female; or undergarments of such person.
(2) No person arrested for a traffic, regulatory, or misdemeanor offense, except in a ease which is violent in nature, which involves a weapon, or which involves a controlled substance, shall be strip searched unless:
(a) There is probable cause to believe that the individual is concealing a weapon, a controlled substance, or stolen property; or
(b) A judge at first appearance has found that the person arrested cannot be released either on recognizance or bond and therefore shall be incarcerated in the county jail.
(3) Each strip search shall be performed by a person of the same gender as the arrested person and on premises where the search cannot be observed by persons not physically conductiny or obseruiny the search pursuant to this section. Any observer shall be of the same gender as the arrested person.
(4) Any body cavity search must be performed under sanitary conditions.
(5) No law enforcement officer shall order a strip search within the ayency or facility without obtaininy the written authorization of the supervisiny officer on duty.
(6) Nothing in this section shall be construed as limiting any statutory or common-law right of any person for purposes of any civil action or injunctive relief.
(Emphasis supplied).
Defendant claims that the strip search in his case violated subsections (3), (4) and (5) of the statute because the search was conducted in the presence of another inmate; it was not conducted under sanitary conditions; and the officer did not obtain written authorization of his supervisor before the search. Defendant also claims that the strip search constituted an unreasonable search in violation of the Fourth Amendment and violated *152 defendant’s rights as a juvenile when he was placed in a holding cell with an adult inmate.[1]
The state concedes that the strip search was done in violation of section 901.211 in that the search was done with another inmate present and the officer did not obtain the prior permission of his supervisor. The state does not agree that 901.211(4) was violated because the officer’s strip search did not include penetration of a body cavity.
Despite conceding that the search violated portions of section 901.211, the state argues that the exclusionary rule should not be the sanction where the search was undertaken with probable cause under section 901.211(2)(a). Furthermore, the state contends that the failure to follow the statutory requirements should be excused because the search was done “in good faith.”
“The purpose of a judicially imposed exclusionary rule is to deter police misconduct resulting in constitutional violations, or its equivalent.” Rice v. State, 525 So.2d 509, 511 (Fla. 4th DCA 1988). See also Arizona v. Evans, — U.S.-, 115 S.Ct. 1185,131 L.Ed.2d 34 (1995); United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Because the exclusionary rule was intended to serve as a deterrent to prevent future violations, the United States Supreme Court developed the good faith exception, which the state asserts applies here:
[W]here the officer’s conduct is objectively reasonable, “excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that ... the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.”
Leon, 468 U.S. at 919-20, 104 S.Ct. at 3419 (quoting Stone v. Powell, 428 U.S. 465, 539-40, 96 S.Ct. 3037, 3073, 49 L.Ed.2d 1067 (1976) (White, J., dissenting)). However, the police officer’s ignorance here of the requirements for a strip search and the supervisor’s ignorance and misadvice to the officers do not constitute objective reasons for excusing the statutory violation. Ignorance of the law does not excuse a private citizen; it certainly does not excuse a law enforcement officer from violating a statute designed to regulate police conduct.
While a strip search of a juvenile does not per se violate the Fourth Amendment, a strip search of a juvenile suspect implicates both Fourth Amendment rights against unreasonable searches and seizures and privacy rights protected under the United States Constitution and, more explicitly, under the Florida Constitution. See Art. I, § 23, Fla. Const. It is the manner in which the search is conducted in a given case which may violate the Fourth Amendment. As the third district stated in Gonzalez v. State, 541 So.2d 1354, 1355-56 (Fla. 3d DCA 1989), a case dealing with the strip search of a prisoner:
[O]ne of the constitutional rights retained by a prisoner, at least to some minimal extent, is the protection of the Fourth Amendment against unreasonable searches and seizures. Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). With respect to searches of the person of a prisoner, the court balances four factors in determining whether such searches are reasonable under the Fourth Amendment: (1) the scope of the intrusion, (2) the manner in which it was conducted, (3) the justification for initiating it, and (4) the place in which it was conducted. Bell; Vera v. State, 400 So.2d 1008,1010 (Fla. 3d DCA 1981). Applying these standards, it seems clear to us that “a more substantial showing should be necessary to justify a search of the person [of a prisoner] when it involves a strip search or an intrusion into the body.” 4 W. La Fave, Search and Seizure § 10.9(b), at 110 (2d ed. 1987).
The “more intense, unusual, prolonged, uncomfortable, unsafe or undignified the procedure, or the more it intrudes upon essential standards of privacy, the greater the requirement that the procedure be found necessary.” People v. West, 170 Cal.App.3d 326, 216 Cal.Rptr. 195, 200-01 (1985).
*153 In Rankin v. Colman, 476 So.2d 234 (Fla. 5th DCA 1985), review denied, 484 So.2d 7 (Fla.1986), the fifth district applied the balancing test to a ease involving a strip search conducted after an arrest for failure to produce a driver’s license. It held that “a strip search and body cavity search of persons arrested for minor traffic offenses is prima facie unreasonable and an unwarranted intrusion on the personal privacy of such persons, at least without showing some justification by the arresting authority.” Id. at 288. “There must be a strong showing justifying such search in view of the minor character of the charge.” Id.
In Gonzalez, the search satisfied Fourth Amendment standards where the justification for the strip search was that the keys to a cell block had disappeared and where the strip search was conducted in a private place, a bathroom, in the presence of two officers under non-abusive circumstances. See also Justice v. City of Peachtree City, 961 F.2d 188 (11th Cir.1992) (strip search of juvenile was conducted in least intrusive manner where limited to exclude body cavities and performed by officers of same sex in room ■with only participants present).
Section 901.211 codifies minimum acceptable standards of conduct for law enforcement officers conducting strip searches in Florida. When a strip search is deemed necessary by a supervisor, the statute mandates that the strip search should be performed in the least humiliating and least intrusive manner and only under sanitary conditions.
This strip search expressly violated statutory rights afforded defendant by a statute designed to regulate police behavior. The violations were not technical or de minimis. The courts of this state have uniformly held test results obtained in violation of statutory directives to be inadmissible. See Gulley v. State, 501 So.2d 1388, 1391 (Fla. 4th DCA 1987), and cases cited therein.
Welch v. Rice, 636 So.2d 172 (Fla. 2d DCA 1994), the only case to construe this statute, does not change our conclusion. In Welch, the second district construed section 901.211(2) not to apply in cases involving an individual arrested on a capias warrant because of a failure to appear. The second district reasoned that indirect criminal contempt was not a “traffic, regulatory or misdemeanor offense,” even though the underlying offense, failure to have a license for a cat, would surely have been covered as either a regulatory or misdemeanor offense.
Notwithstanding this statutory construction, the second district reversed the trial court’s entry of summary judgment in favor of the sheriff because the remainder of section 901.211 applied to all strip searches and there was evidence in the record of a violation of subsection 901.211(5). Even if we were to construe the first portion of the statute not to apply to a defendant arrested for failure to appear for a traffic offense, our holding in this ease rests on violations of subsections 3, 4 and 5 which unequivocally apply to all strip searches.
We discern no intent on the part of the legislature to limit the court’s ability, in the appropriate ease, to suppress the results of a strip search obtained in violation of the statute. The fact that the statute contains the language that “[njothing in this section shall be construed as limiting any statutory or common-law right of any person for purposes of any civil action or injunctive relief,” see § 901.211(6), does not evince a legislative intent to limit the sanctions imposed by the trial courts for statutory violations. Rather, it evinces an expansive legislative intent.
The remedy of a civil suit for damages would be a poor substitute for the sanction of exclusion — if deterrence of future police misconduct is a goal. It is often difficult, time-consuming, and in this case, potentially embarrassing to the juvenile involved, to litigate a civil case based on a statutory violation. The fact that the juvenile may be able to sue civilly should not limit courts from fashioning evidentiary sanctions to discourage statutory violations. As Judge Hurley observed, “[t]o permit a statute to be violated with impunity is to void the statute as effectively as if it were declared a nullity.” State v. Gunn, 408 So.2d 647, 650 (Fla. 4th DCA 1981) (Hurley, J., dissenting).
*154 Here defendant was arrested for outstanding traffic warrants. He was handcuffed and taken to the police station solely for paperwork to be performed before transport to the Sheriff of Palm Beach County. Given both the historical purpose of the exclusionary rule and the substantial statutory violation of the statute, suppression of the cocaine obtained by the unlawful strip search is an appropriate remedy. We therefore do not reach the question of whether the strip search violated the juvenile’s constitutional rights against unreasonable searches and rights of privacy guaranteed by the Florida Constitution.
Accordingly we reverse the order denying the motion to suppress and remand with directions to vacate the adjudication of delinquency.
REVERSED AND REMANDED.
GLICKSTEIN, J., concurs.
FARMER, J., dissents with opinion.

. A search of a juvenile in the presence of an adult inmate may also be contrary to the requirements that juveniles are to be segregated from adults. See generally § 39.044, Fla.Stat. (1993).