707 So.2d 1129 (1997)
STATE of Florida, Appellant,
v.
James RUTHERFORD, Appellee.
No. 95-4214.
District Court of Appeal of Florida, Fourth District.
October 15, 1997.
Opinion Denying Rehearing and Certification February 4, 1998.
*1130 Robert A. Butterworth, Attorney General, Tallahassee, and Patricia Ann Ash, Assistant Attorney General, West Palm Beach, for appellant.
J. David Bogenschutz of Bogenschutz & Dutko, P.A., Fort Lauderdale, for appellee.

EN BANC
GROSS, Judge.
This is an appeal from an order suppressing medical records obtained by a state attorney's investigative subpoena in a criminal proceeding. Because the records were obtained contrary to constitutional and statutory provisions, we affirm.
After an automobile accident on Interstate 95, an ambulance brought appellee, James Rutherford, to Broward General Medical Center. Florida Highway Patrol investigators believed that Rutherford had been the driver of a car involved in a high speed crash with a loss of control. The passenger in the car died at the scene of the accident.
The investigators went to the hospital to interview Rutherford. They perceived the odor of an alcoholic beverage on his breath and requested that a blood sample be taken from him pursuant to either section 316.1932(1)(c) or 316.1933, Florida Statutes (1995). At the time, Rutherford was in the emergency room undergoing treatment as a "priority 1" patient. The blood was drawn at the officers' request 4 hours and 45 minutes after the crash.
Rutherford had arrived at the hospital about 45 minutes after the collision. The investigators believed that there were hospital records or reports made shortly after Rutherford's arrival that may have indicated that he was under the influence of alcohol and that showed test results for his blood alcohol level.
The prosecutor caused a subpoena duces tecum to issue to the Broward General Medical Center for all of the hospital's medical records regarding Rutherford. The state did not give either Rutherford or his lawyer notice of the subpoena. Obeying the subpoena, the hospital furnished Rutherford's records to the state. The state was thus able to review Rutherford's medical records without complying with the notice provision of subsection 395.3025(4)(d), Florida Statutes (1995), and the procedural requirements of Hunter v. State, 639 So.2d 72 (Fla. 5th DCA 1994), which this court adopted in Ussery v. State, 654 So.2d 561 (Fla. 4th DCA 1995).
The trial court granted Rutherford's motion to suppress the medical records obtained by the subpoena, on the basis of State v. Wenger, 560 So.2d 347 (Fla. 5th DCA 1990).[1] The court denied the state's request for an opportunity to comply with Hunter by demonstrating the relevancy of the records to its pending criminal investigation so that a second subpoena duces tecum could issue for the same medical records that it had already reviewed.
Section 395.3025(4) states that a hospital's "patient records are confidential and must not be disclosed without the consent of the person to whom they pertain." Subsection 395.3025(4)(d) provides an exception to the rule of non-disclosure without the patient's consent
[i]n any civil or criminal action, unless otherwise prohibited by law, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice by the party seeking such records to the patient or his or her legal representative.
In Hunter v. State, the fifth district construed section 395.3025(4)(d) in conjunction with section 27.04, Florida Statutes (1993), which allows a state attorney "the process of his or her court" to summon and examine witnesses in the course of a criminal investigation. Hunter involved the state attorney's attempt to subpoena records from a hospital *1131 as part of a criminal investigation of a traffic accident. The state took the position that section 27.04 authorized the issuance of a subpoena by the clerk at the prosecutor's discretion, without the necessity of a judge's approval or notice to the patient under section 395.3025(4)(d).
The fifth district rejected this argument, holding that for a state attorney's investigative subpoena for hospital records to issue, the prosecutor must first comply with the procedural requirements of section 395.3025(4)(d). See Hunter, 639 So.2d at 74.
We hold that the state attorney may use an investigative subpoena to compel disclosure of a patient's medical records, but the patient must first be given notice before the subpoena is issued. If the patient objects, the state has the obligation and burden to show the relevancy of the records requested[,] before the subpoena for the patient's medical records is allowed to issue.
Id. This statutory procedure allows the trial court to narrow the scope of a subpoena, to separate information relevant to the criminal investigation from facts that are protected from disclosure by the patient's right to privacy.
Hunter recognized that a patient's medical records were protected under Florida's right to privacy. See Art. I, § 23, Fla. Const.; Slim-Fast Foods Co. v. Brockmeyer, 627 So.2d 104, 106 (Fla. 4th DCA 1993) (stating "that patient's privacy interests require the deletion of identifying information where non-parties' medical files are otherwise discoverable"). Section 395.3025(4)(d) is a legislative determination singling out hospital records as being entitled to protection from prying eyes. See Acosta v. Richter, 671 So.2d 149, 154 (Fla.1996) (noting that statute analogous to section 395.3025(4)(d), section 455.241(2), Florida Statutes (1995), creates a "broad and express privilege of confidentiality" as to medical records and medical condition of patient). Hunter observed that the trial court
must act as a shield to protect the patient's right to privacy by determining whether medical records are relevant to a pending criminal investigation. The role of the court is extremely important because personal and potentially embarrassing information contained in the medical records may be disclosed. This invasion of a patient's privacy can only occur after the court finds a compelling state interest and that the information is relevant.
639 So.2d at 74 (emphasis supplied).
A finding that a patient's hospital records are protected under article I, section 23, is consistent with the broad scope accorded the provision by the Florida Supreme Court. See In re T.W., 551 So.2d 1186, 1192 (Fla. 1989); Winfield v. Division of Pari-Mutuel Wagering, Dep't of Business Regulation, 477 So.2d 544, 546 (Fla.1985). A principal aim of the privacy amendment is to secure informational privacy, to "afford individuals some protection against the increasing collection, retention, and use of information relating to all facets of an individual's life." Rasmussen v. South Florida Blood Serv., Inc., 500 So.2d 533, 536 (Fla.1987). In Winfield, the court held that the amendment covered a citizen's bank records in the custody of a financial institution, materials considerably less "private" than hospital or medical records, traditional matters for which a person might have a legitimate expectation of privacy.
Where a right to privacy attaches, the state may vindicate an encroachment on that right if it demonstrates that the intrusion is justified by a compelling state interest and that the state has used the least intrusive means to accomplish its goal. See Shaktman v. State, 553 So.2d 148, 151-52 (Fla.1989). A compelling state interest in this type of case is established by a showing that the police have a reasonable founded suspicion that protected materials contain information relevant to an ongoing criminal investigation. See id. at 152.
To show that the least intrusive means have been used to invade a privacy right, the state must demonstrate compliance with procedural safeguards which, "at a minimum, necessitate judicial approval prior to the state's intrusion into a person's privacy." Id. With its requirement that a court authorize a subpoena after notice to the patient, section 395.3025(4) is a legislative recognition of a category of private information entitled to procedural safeguards. Evidence that the *1132 state has followed statutory procedures for obtaining a certain type of information is indicative of compliance with the second prong of the Shaktman test. Shaktman, 553 So.2d at 152.
In sum, under Hunter, notice to the patient that the prosecution seeks his hospital records and, if the patient objects, a court's finding that the records are relevant to a criminal investigation, are the two procedural gateways through which the state must pass in order to obtain a patient's hospital records. This court followed Hunter in Ussery v. State, a case where the state gave proper notice to the patient and the trial court authorized the subpoena after a hearing. 654 So.2d at 561.
Unlike Hunter and Ussery, this was a case where the state gave no notice to the patient before obtaining his hospital records by subpoena. In Hunter, the state did not obtain copies of the records in violation of the statute. This case is factually identical to State v. Wenger, 560 So.2d at 347, where the defendant was brought to a hospital for treatment of injuries he received in a motor vehicle accident in which a person was killed. The defendant's blood sample was drawn for medical treatment purposes. The state attorney obtained the hospital blood test report pursuant to section 27.04, without giving notice to the defendant that the state was seeking his medical records from the hospital. The fifth district affirmed the trial court's order suppressing the blood test report, since the state attorney's failure to provide the defendant with the statutory notice resulted in the report being "obtained contrary to the privileged and confidential status given to [it] by the legislature." Id. at 348.
We agree with the Wenger court's application of an exclusionary rule. The rule is properly applied in cases where evidence is obtained through a constitutional violation, e.g., State v. Albury, 453 So.2d 461, 462 (Fla. 4th DCA 1984), a violation of a statute implementing or expanding on a constitutional right, see Robertson v. State, 604 So.2d 783 (Fla.1992); D.F. v. State, 682 So.2d 149 (Fla. 4th DCA 1996); Gulley v. State, 501 So.2d 1388 (Fla. 4th DCA 1987); State v. Slaney, 653 So.2d 422 (Fla. 3d DCA 1995), or where there has been an improper intrusion into a privileged relationship. See State v. Caballero, 510 So.2d 922 (Fla. 4th DCA 1987) (evidence obtained in violation of attorney-client privilege). In weighing the application of an exclusionary rule, the supreme court has found the following passage to be "particularly insightful:"
The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused.
State v. White, 660 So.2d 664, 666-67 (Fla. 1995) (quoting United States v. Leon, 468 U.S. 897, 919, 104 S.Ct. 3405, 3418, 82 L.Ed.2d 677 (1984) (quoting Michigan v. Tucker, 417 U.S. 433, 447, 94 S.Ct. 2357, 2365, 41 L.Ed.2d 182 (1974))).
Exclusion of evidence in this case will serve its purpose and reach a type of governmental action that an exclusionary rule was designed to deterprosecutorial misconduct that is likely to be prevented if the evidence seized is suppressed. See White, 660 So.2d at 667. This case does not involve the errors of police officers with limited legal training, but of prosecutors who have had the benefit of law school and on-the-job experience and who have taken an oath to uphold the Florida Constitution. See R. Regulating Fla. Bar 3-4.7. The requisite procedures for obtaining hospital recordsnotice to the patient and judicial revieware not complex. The state's required showing under Hunter to obtain the recordsthat they are relevant to a pending criminal investigationis not onerous. When the cost of losing evidence is compared to the minimal benefits realized from violating the statute, then prosecutorial compliance with the statute will be likely to occur in the future.
Without the threat of the exclusion of evidence, the incentive for a prosecutor to comply with section 395.3025(4)(d) is minimal. The statute does not create any other remedy for a violation of its procedures. The *1133 experience of an earlier generation was that alternative remedies to the exclusionary rule were "worthless and futile." Mapp v. Ohio, 367 U.S. 643, 652, 81 S.Ct. 1684, 1690, 6 L.Ed.2d 1081 (1961); see also People v. Cahan, 44 Cal.2d 434, 282 P.2d 905, 911-12 (1955). Prosecutors enjoy absolute immunity from lawsuits for damages in the performance of their quasi-judicial functions of initiating or maintaining a prosecution. See Office of the State Attorney, Fourth Judicial Circuit of Florida v. Parrotino, 628 So.2d 1097 (Fla.1993); Hansen v. State, 503 So.2d 1324 (Fla. 1st DCA 1987). If, as the state argues, a statutory violation could be erased by a later evidentiary showing of relevance, then convenience and expediency might overwhelm the privacy interests that the statute seeks to protect.
The state's proposal to the trial court___ that it be given an after-the-fact opportunity to make the requisite showing under section 395.3025 and Hunter___ would undercut the values implemented by the statutory and constitutional provisions and discourage future compliance with them. Bypassing the statutory procedures eliminates a court's ability to screen out protected information. Where private matters have been released under an overbroad subpoena along with discoverable information, the damage the statute seeks to prevent will already have occurred.
The order of the trial court is affirmed.
GLICKSTEIN, DELL, GUNTHER, WARNER, KLEIN, PARIENTE and STEVENSON, JJ., concur.
POLEN, J., dissents with opinion, in which STONE, C.J., and FARMER, J., concur.
FARMER, J., dissents with opinion, in which POLEN, J., concurs.
SHAHOOD, J., recused.
POLEN, Judge, dissenting.
I respectfully dissent. The majority recognizes the correct procedure for the state to subpoena medical records such as Rutherford's blood test results was set forth in Hunter v. State, 639 So.2d 72 (Fla. 5th DCA), rev. denied, 649 So.2d 233 (Fla.1994). The majority fails to acknowledge, however, that the Hunter court allowed the state to do exactly what it seeks to do by this appealto issue a second subpoena which comports with the requirements of section 395.3025(4)(d), Florida Statutes (1993).
While this statute recognizes generally a patient's right of privacy as to their medical records, in the case of a person charged with driving under the influence of alcohol, such right must be balanced against society's interest in being able to obtain relevant evidence. Indeed, the threshold the state must cross to overcome the privilege is very low: notice to the person whose records are sought, and a hearing at which the relevance of the records must be established. Each of these requirements can be easily met. I would agree with the majority that the contents of the improperly obtained medical records cannot be used to meet the requirement of showing relevancy. The showing must be made from facts established without resort to the medical records themselves.
As further evidence of the minimal privacy interests attaching to blood tests where a DUI prosecution is involved, the majority recognizes that section 316.1932(1)(c) or 316.1933, Florida Statutes, allows the taking of a person's blood sample without their consent or the due process requirements of section 395.3025(4)(d). Indeed, that is precisely what was done in this case. Even without the other records sought under the subpoena, the state may have sufficient evidence to proceed with Rutherford's prosecution. In another case, however, where section 316.1932 or 316.1933 blood samples were not obtained, the state might be faced with having to drop pending charges.
While the majority argues persuasively that an assistant state attorney should know the law, and should not be rewarded for noncompliance with the statutory requirements to obtain the records sought, I would suggest the penalty weighs more heavily against the people of the state, who may be unable to have a DUI-violator (in this case causing the death of another person) tried due to lack of evidence. The minimal privacy rights of the accused suggested above should yield to the state's ability to have a second subpoena issued, once the procedural and substantive requirements of section *1134 315.3025(4)(d) are met. I would reverse with directions to allow the issuance of a second subpoena, as the fifth district did in Hunter.
STONE, C.J., and FARMER, J., concur.
FARMER, Judge, dissenting.
Although I agree with Judge Polen's views, I write to express additional grounds for disagreeing with the majority.
As I have previously stated, I do not believe that judges should suppress evidence when it has been obtained in violation of a statute unless either the statute so provides or there is a constitutional violation in so doing. D.F. v. State, 682 So.2d 149, 154 (Fla. 4th DCA 1996) (Farmer, J., dissenting). Here the statute is silent as to the consequences of failing to give notice, and there is no suggestion that the patient blood alcohol level records were obtained in violation of the constitution.
Having said that, I hasten also to profess that I doubt there has been any statutory violation at all in this case. I recognize that the subpoena was requested without notice to the defendant, but I think his operation of the motor vehicle amounted to a consent to the state to have the records of any blood alcohol tests administered after the incident. As Judge Polen rightly suggests, section 316.1932(1)(c) clearly provides that such a request for treatment by the driver is a consent to a blood alcohol test. In my mind, a consent to the test is tantamount to a consent to the test results. Hence, reading section 395.3025(4)(d) together with section 316.1932(1)(c), yields the conclusion that any failure to give notice with the subpoena request is inconsequential in light of the obvious consent to the test and its results.
I would reverse the trial judge.
POLEN, J., concurs.

EN BANC

ON MOTION FOR REHEARING AND/OR FOR CERTIFICATION OF CONFLICT AND/OR QUESTION OF GREAT PUBLIC IMPORTANCE
GROSS, Judge.
This case is before the court on the appellant's motions for rehearing and certification.
Because there is no express and direct conflict between this case and Hunter v. State, 639 So.2d 72 (Fla. 5th DCA 1994), we deny the state's motion to certify conflict pursuant to Florida Rule of Appellate Procedure 9.030(a)(2)(A)(iv). Unlike this case, there is no indication in Hunter that the state actually obtained hospital records in violation of section 395.3025(4)(d), Florida Statutes (1993). Thus there was no actual violation of the patient's privacy interests which the statute seeks to protect. This is in contrast with the situation presented in State v. Wenger, 560 So.2d 347, 348 (Fla. 5th DCA 1990), where the prosecutor actually obtained blood test reports without complying with section 395.017(3)(d), Florida Statutes (1987), the predecessor to the statute at issue in this case. The Fifth District suppressed the test results in Wenger because of the statutory violation. That court cited Wenger with approval in Hunter and did not discern a conflict between its own opinions.
The state's motions for rehearing and for certification under Rule 9.030(a)(2)(A)(v) are denied.
STONE, C.J., and POLEN and FARMER, JJ., dissent without opinion.
SHAHOOD, J., recused.
NOTES
[1] By separate orders, the trial court denied the defendant's motion to suppress the results of the test on the blood drawn at the investigators' request. These orders are not at issue in this appeal.