804 So.2d 338 (2001)
Stanley CAMERON, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-4169.
District Court of Appeal of Florida, Fourth District.
July 18, 2001.
Rehearing Denied December 10, 2001.
*340 Kevin J. Kulick of Kevin J. Kulick, P.A., Fort Lauderdale, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Steven R. Parrish, Assistant Attorney General, Fort Lauderdale, for appellee.
FARMER, J.
While driving his boat at a high rate of speed defendant collided with another boat and killed six people. After the accident, defendant was rushed to the hospital where, the odor of alcohol from his breath being apparent to hospital personnel, police asked the attending nurse to draw a blood sample and test it for alcohol. The nurse responded that she would provide a blood sample but could not get to it until later as defendant was going into emergency surgery. The following day, a prosecutor obtained a court order for release of the promised blood sample pursuant to the implied consent statutes,[1] and the hospital turned over to police a sample of defendant's blood. To be sure, the actual sample had been drawn upon defendant's arrival at the hospital, i.e. before the police request. Later testing of the sample showed that defendant's blood alcohol level was .21 at approximately 45 minutes after the collision.
Defendant was charged with six counts of manslaughter while operating the vessel (boating) under the influence of alcohol (BUI), six counts of manslaughter with an unlawful blood alcohol level (UBAL), one count of BUI injury, one count of UBAL injury, one count of BUI property damage, and one count of UBAL property damage. The jury found defendant guilty on all *341 counts.[2]
Before trial, defendant filed a motion to suppress his blood alcohol level test results. He argued that because the sample was not actually drawn directly in response to a police request the implied consent law did not apply. He further argued that because the state was then seeking nothing less than part of his hospital medical records the state was required first to give notice to him of the request under State v. Rutherford, 707 So.2d 1129 (Fla. 4th DCA 1997). The trial court denied the motion, holding that the sample was obtainable under the implied consent law and without notice to defendant. We agree.
In Rutherford, the prosecutor had sought a patient's medical file in addition to the sample of blood drawn pursuant to an officer's request. It served an investigative subpoena duces tecum on the hospital but did not give notice to the defendant. We affirmed the suppression of the medical records because of noncompliance with section 395.3025(4), which creates a general right of privacy in a patient's hospital records. We reasoned that under section 395.3025(4):
"a patient's medical records [are] protected under Florida's right to privacy.... Where a right to privacy attaches, the state may vindicate an encroachment on that right if it demonstrates that the intrusion is justified by a compelling state interest and that the state has used the least intrusive means to accomplish its goal."
707 So.2d at 1131. To acquire such records, the prosecutor should have provided notice to the defendant of the subpoena and, if defendant objected, obtained court permission upon a showing that the records were relevant to a criminal investigation. See also Hunter v. State, 639 So.2d 72, 74 (Fla. 5th DCA), review denied, 649 So.2d 233 (Fla.1994).
This case is distinguishable. Here rather than a patient's hospital records, the police simply asked the hospital staff for a vessel operator's blood sample, as they are clearly allowed to do under section 327.352(3).[3] That statute provides that:

"Notwithstanding any provision of law pertaining to the confidentiality of hospital records or other medical records, information relating to the alcoholic content of the blood or breath or the presence of chemical substances or controlled substances in the blood obtained pursuant to this section shall be released to a court, prosecuting attorney, defense attorney, or law enforcement officer in connection with an alleged violation of s. 327.35 upon request for such information." [e.s.]
Section 395.3025(4), the statute at issue in Rutherford, is clearly one of the other provisions of law "pertaining to the confidentiality of hospital records" mentioned in the introductory clause in section 327.352(3).
In contrast to Rutherford's section 395.3025(4), the boating consent statute, section 327.352(3), allows the police and prosecutor to have blood alcohol samples merely upon the asking, so long as the *342 request is "in connection with an alleged violation of s. 327.35." No notice to a defendant of a police request under section 327.352(3) was required because he had already consented to it, and the police clearly had probable cause at the time of the request to arrest and charge defendant with a section 327.35 violation. Moreover, the police did not also seek defendant's other medical records, as the prosecutor did in Rutherford. While the hospital personnel in this case gave blood from a sample actually drawn upon defendant's arrival at the hospital and before the police request was made, it is still a sample to which defendant is deemed to have consented by operating his vessel. See § 327.352(1)(e)1, Fla. Stat. (1997) ("However, the failure of a law enforcement officer to request the withdrawal [e.s.] of blood shall not affect the admissibility of a test of blood withdrawn for medical purposes."). Hence the blood test results were properly admitted and support the UBAL convictions.
As the state concedes, however, we must nevertheless reverse and remand for a new trial on all of the BUI counts. As regards these charges only, it was error for the trial court to instruct the jury on the statutory presumptions of impairment.[4] Because the state did not opt to adduce blood alcohol test results complying with the testing procedures set forth in section 327.354(3), that statutory presumption was not available.[5] Where the state elects to adduce blood sample test results drawn by hospital personnel and given to police under section 327.352(3) and which do not comply with 327.354(3), a trial court may not instruct the jury as to the statutory presumptions of impairment. State v. Miles, 775 So.2d 950, 956-57 (Fla.2000); Robertson v. State, 604 So.2d 783, 792 (Fla. 1992). It is true that Miles and Robertson arose under the motor vehicle statutes and not the boating statutes, but the two statutory schemes are identical and the result under the latter should be no different than the result under former.
Nor can we find beyond a reasonable doubt that this error had no affect on the jury's verdict. See Goodwin v. State, 751 So.2d 537, 541 (Fla.1999) (explaining that to find an error harmless it must be beyond a reasonable doubt that the error could not have affected the jury). All of the BUI counts required the jury to find that defendant was operating the boat under the influence of alcohol. The erroneous jury instruction told the jury to presume that very fact. Clearly it was prejudicial. *343 On these counts only, therefore, defendant is entitled to a new trial.
We do find that the error had no affect on the jury's verdict on the UBAL manslaughter counts, however. To find defendant guilty of UBAL manslaughter, the jury had to find that defendant had a blood alcohol level exceeding .08 when the accident occurred. There was direct evidence that his blood alcohol level was .21 less than an hour after the accident. The statutory presumption on which the court instructed the jury was clearly made applicable only to the BUI counts.[6] We therefore affirm the UBAL manslaughter convictions.
Finally, we address defendant's appeal of his sentence.[7] His guidelines scoresheet begins in part I with the conviction for only 1 of the BUI manslaughter counts as the primary offense, resulting in 74 points. Under part II (Additional Offenses), the first entry is 5 counts of BUI/UBAL manslaughter (5×37), resulting in 185 points. The next entry in part II is 1 count of BUI causing serious bodily injury, resulting in 28 points. The final entry in part II is 1 count of BUI causing property damage, resulting in .2 points. In part III (Victim Injury) the court added six counts involving death (6×120), resulting in 720 points. The court also added one count of moderate injury, resulting in 18 points. There were no other entries on any remaining part, and defendant's total points came to 1025.2. The recommended sentence under the guidelines was therefore 997.2 months, or 83.1 years. Under the statute, the court also had discretion to vary the recommended sentence by a factor of 25%±. See § 921.0014(2), Fla. Stat. (1997) ("The recommended sentence length in state prison months may be increased by up to, and including, 25 percent or decreased by up to, and including, 25 percent, at the discretion of the court."); see also State v. Myers, 713 So.2d 1013 (Fla.1998) (where recommended sentence under guidelines exceeds general statutory maximum trial court nevertheless has discretion to vary recommended sentence upward with 25% range allowed by guidelines statutes). The court sentenced him to a term of 85 years.
Under the non-guidelines sentencing statutes, however, UBAL manslaughter and BUI manslaughter are each second degree felonies, as to which there is a general maximum sentence of 15 years imprisonment.[8] Thus, the trial court's sentence of 85 years exceeded these general statutory maximums. Under the applicable guidelines statutes, however, the recommended guidelines sentence must be imposed if as here it exceeds the general statutory maximum.[9] In Mays v. State, *344 717 So.2d 515 (Fla.1998), the supreme court upheld the constitutionality of these statutes and also held that, for sentences imposed under the guidelines applicable in 1997, the sentence recommended under the guidelines shall be imposed if it exceeds the general statutory maximum sentence. In Myers, the court added that even where the trial judge exercises discretion to increase the recommended sentence under the guidelines within the 25% range as authorized by the same statutes, the sentence imposed becomes the "true" maximum sentence under Florida law.[10]
Our reversal of the BUI convictions creates a problem with the sentence.[11] First we note that at the sentencing hearing the state moved to vacate three of the UBAL/manslaughter counts, three of the BUI/manslaughter counts, all of the vessel homicide counts, the UBAL bodily injury count, and the UBAL property damage count.[12] The trial court granted the motion and entered an order stating that defendant was adjudicated guilty only as to three counts of UBAL manslaughter, three counts of BUI manslaughter, one count of BUI bodily injury, and one count of BUI property damage. By our opinion today, however, we have reversed all of these BUI convictions for a new trial on these counts only.
That leaves for sentencing purposes today only the three remaining counts of UBAL manslaughter. Yet under the scoresheet actually used, one of the BUI manslaughter convictions was the primary offense, but that conviction has now been set aside. Unless defendant is also convicted after a new trial for the remaining three counts of BUI manslaughter, the victim injury points will be significantly fewer and the resulting recommended sentence under the guidelines thus substantially lessened. It is therefore apparent that the reversal of the BUI convictions requires that the sentence also be reversed. The scoresheet will have to be *345 redone at a new sentencing to reflect only the surviving convictions and, of course, any convictions that might result from a new trial.
As for all of defendant's other arguments, we affirm.
STEVENSON and SHAHOOD, JJ., concur.
NOTES
[1] See § 327.352(1)(c), Fla. Stat. (1997) ("Any person who accepts the privilege extended by the laws of this state of operating a vessel within this state is, by operating such vessel, deemed to have given his or her consent to submit to an approved blood test for the purpose of determining the alcoholic content of the blood or a blood test for the purpose of determining the presence of chemical substances... as provided in this section if there is reasonable cause to believe the person was operating a vessel while under the influence of alcoholic beverages ... and the person appears for treatment at a hospital, clinic, or other medical facility and the administration of a breath or urine test is impractical or impossible.... Any person who is incapable of refusal by reason of unconsciousness or other mental or physical condition is deemed not to have withdrawn his or her consent to such test."); see also § 327.353(1), Fla. Stat. (1997) ("Notwithstanding any recognized ability to refuse to submit to the tests provided in s. 327.352 or any recognized power to revoke the implied consent to such tests, if a law enforcement officer has probable cause to believe that a vessel operated by a person under the influence of alcoholic beverages, any chemical substances, or any controlled substances has caused the death or serious bodily injury of a human being, the person shall submit, upon the request of a law enforcement officer, to a test of the person's blood for the purpose of determining the alcoholic content thereof....").
[2] The state also charged defendant with six counts of vessel homicide, but the jury reached no verdict on that issue and the State subsequently dropped these charges. As we shall discuss presently, after the jury returned a verdict of guilty on all counts, the state asked for a vacatur of the guilty verdict as to 3 of the six BUI manslaughter counts, 3 of the six UBAL manslaughter counts, the UBAL bodily injury count, and the UBAL property damage count.
[3] Section 327.352(3) is a carbon copy of section 316.1933(4), applicable to motor vehicle operators.
[4] See § 327.354(2)(c), Fla. Stat. (1997) ("If there was at that time a blood-alcohol level or breath-alcohol level of 0.08 or higher, that fact is prima facie evidence that the person was under the influence of alcoholic beverages to the extent that his or her normal faculties were impaired. Any person who operates a vessel and who has a blood-alcohol level or breath-alcohol level of 0.08 or higher is guilty of operating a vessel with an unlawful blood-alcohol level or breath-alcohol level.").
[5] See § 327.354(3), Fla. Stat. (1997) ("A chemical analysis of a person's blood to determine alcoholic content or a chemical or physical test of a person's breath, in order to be considered valid under this section, must have been performed substantially in accordance with methods approved by the Department of Law Enforcement and by an individual possessing a valid permit issued by the department for this purpose. Insubstantial differences between approved techniques and actual testing procedures or insubstantial defects concerning the permit issued by the department, in any individual case, do not render the test or test results invalid. The Department of Law Enforcement may approve satisfactory techniques or methods, ascertain the qualifications and competence of individuals to conduct such analyses, and issue permits subject to termination or revocation in accordance with rules adopted by the department.").
[6] Specifically, the judge instructed the jury that: "These presumptions may be considered along with any other evidence presented in deciding whether the defendant was under the influence of alcoholic beverages to the extent that his normal faculties were impaired."
[7] The offenses were committed in 1997, so the 1995 sentencing guidelines applied. See § 775.082(8)(b), Fla. Stat. (1997) ("The 1995 sentencing guidelines that were effective October 1, 1995, and any revisions thereto, apply to all felonies, except capital felonies, committed on or after October 1, 1995, and before October 1, 1998.").
[8] See § 327.35(2)(c)3.a and § 775.082(3)(c), Fla. Stat. (1997).
[9] See § 921.001(5), Fla. Stat. (1997) ("If a recommended sentence under the guidelines exceeds the maximum sentence otherwise authorized by s. 775.082, the sentence under the guidelines must be imposed, absent a departure."); § 921.0014(2), Fla. Stat. (1997) ("If a recommended sentence under the guidelines exceeds the maximum sentence otherwise authorized by s. 775.082, the sentence recommended under the guidelines must be imposed absent a departure.").
[10] In 1998, however, the Legislature rewrote the guidelines sentencing statutes so that the result in Myersa recommended sentence above the general statutory maximum may be varied further upwards by as much as 25% is no longer applicable. See § 921.0024(2), Fla. Stat. (2000) ("The permissible range for sentencing shall be the lowest permissible sentence up to and including the statutory maximum, as defined in s. 775.082, for the primary offense and any additional offenses before the court for sentencing.... If the lowest permissible sentence under the code exceeds the statutory maximum sentence as provided in s. 775.082, the sentence required by the code must be imposed. If the total sentence points are greater than or equal to 363, the court may sentence the offender to life imprisonment.").
[11] We reject defendant's argument that Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), bars any use of additional points for the death of the victims in the guidelines sentencing calculus. He contends that Apprendi requires that the death/injury enhancement itself be explicitly submitted to the jury before the court may use these additional points to increase the sentence. The short answer is that the jury's conviction on the UBAL manslaughter counts represents a sufficient jury finding to authorize an enhancement based on these additional points. Cf. Tucker v. State, 726 So.2d 768 (Fla.1999) (jury verdict finding defendant "guilty of attempted first-degree murder with a firearm" sufficient to increase permissible sentencing range based on defendant's use of firearm, even though verdict form not technically a special verdict form).
[12] The prosecutor was undoubtedly prompted to do so by State v. Rolle, 560 So.2d 1154 (Fla.1990), in which the court made clear that there is but one offense under section 316.193(1), and that the state may prove that single offense by a showing of either DUI or UBAL. We ourselves have recognized this distinction. See Dejerez v. State, 580 So.2d 656 (Fla. 4th DCA 1991); Parrish v. State, 561 So.2d 685 (Fla. 4th DCA 1990). As section 327.35(1) is identical in structure and text to section 316.193(1), Rolle applies to it as well.